REVISED, November 6, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20507
_____

WILLIAM PRINCE DAVIS,

                              Petitioner-Appellant,

          v.

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                              Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

October 21, 1998

Before KING, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

     William Prince Davis, a Texas death row inmate, requests a

certificate of appealability in order to appeal the district

court's dismissal of his writ of habeas corpus.  In resolving

this appeal, we must decide an issue of first impression for this

circuit, namely, whether the one-year limitations period for the

filing of federal habeas claims by state prisoners is a statute

of limitations subject to equitable tolling or is a

jurisdictional bar.  We conclude that the limitations period does

not circumscribe federal jurisdiction, and can be equitably

tolled in appropriate, albeit extraordinary circumstances.

However, because we find that Davis has not made a substantial showing of the denial of a constitutional right, we deny Davis leave to appeal on all issues presented for appellate review.

## I.  FACTS AND PROCEDURAL HISTORY

In September 1978, William Prince Davis (Davis) was tried in the 209th District Court of Harris County, Texas for a capital offense, murder occurring during a robbery.  The Texas Court of Criminal Appeals summarized the facts of Davis's underlying crime as follows:

> On the evening of June 2, 1978, [Davis] appeared at the door of the office of the Red Wing Ice Cream Company, just as several of the company drivers were turning in their day's receipts.  The proprietor, Richard Lang, aware that something was amiss, began to approach [Davis].  [Davis] shot Lang once in the lower chest with a .32 calibre pistol, and then ordered the drivers up against the wall.  He escaped with more than $700 and a shotgun.  Lang died.  At the time of this offense [Davis] was twenty-one years old.

Ex parte Davis, 866 S.W.2d 234, 237 (Tex. Crim. App. 1993) (en banc).  The guilt-innocence phase of Davis's trial lasted only one day, and on September 18, 1978, the jury found Davis guilty of capital murder.

During the punishment phase of Davis's trial, the prosecutor introduced evidence of Davis's extensive criminal history.  On September 19, 1978, the jury returned affirmative answers to two special questions, asked pursuant to the capital sentencing scheme employed by the State of Texas at the time of Davis's trial.  In their answers, the jury found that Davis acted "deliberately" and that he probably would be dangerous in the

future.[1]  On October 2, 1978, the trial court sentenced Davis to death.

On direct appeal, the Texas Court of Criminal Appeals affirmed Davis's conviction and death sentence, see Davis v. State, 597 S.W.2d 358 (Tex. Crim. App. 1980) (en banc), and the United States Supreme Court declined to grant a writ of certiorari, see Davis v. Texas, 449 U.S. 976 (1980).

After failing in his efforts on direct appeal, Davis filed a state application for a writ of habeas corpus in 1989, which the Court of Criminal Appeals denied in a one-page unpublished opinion.  Davis then filed a second state application for habeas relief in 1991, raising essentially the same issues as he does in this federal petition.  Two years later, the 209th District Court issued findings of fact and conclusions of law and recommended that habeas relief be denied.  The Court of Criminal Appeals then denied habeas relief.  See Ex parte Davis, 866 S.W.2d at 234.

On February 13, 1997, Davis requested an appointment of counsel because his state habeas counsel had become incapacitated.  Two weeks later, Davis moved for an extension of

---

[1] Specifically, the special issues read:

Issue No. 1:  Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant, William Prince Davis, that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result?
Issue No. 2:  Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, William Prince Davis, would commit criminal acts of violence that would constitute a continuing threat to society?

time to file a federal habeas petition.  On March 4, the district

court appointed counsel in the federal proceedings and granted

Davis an extension to file his petition until May 26, 1997.  On

February 18, 1998, the district court granted a further extension

allowing Davis to file his petition by April 20, 1998.[2]  On April

6, 1998, the district court granted Davis's motion to extend his

filing deadline to May 8, 1998.  On May 8, Davis filed his

federal habeas petition, raising several ineffective assistance

of counsel claims.  Respondent Johnson filed a motion in the

district court to dismiss the petition as time-barred, claiming

that Davis filed his petition after the applicable one-year

statute of limitations had run.

On June 2, 1998, the district court denied Davis habeas

relief on alternative grounds.  First, the court found that

Davis's petition was untimely because it was filed after the

applicable one-year limitations period.  It ruled that it was

"without the power to resurrect the petition" after the filing

period had lapsed and that it therefore may have erred by

previously granting Davis extensions of time to file beyond the

statutory period.  Davis v. Johnson, 8 F.Supp.2d 897, 900 (S.D.

_____

[2] Davis claims that the district court did not notify
appointed counsel of his appointment until February 9, 1998.
This lack of notice, Davis argues, justifies equitably tolling
the applicable limitations period in this case to allow his
habeas petition to proceed.  Because we assume without deciding,
infra, that the circumstances of this case justify equitably
tolling the one-year statute of limitations, it is not necessary
for this court to remand for factual findings concerning when
Davis's attorney received notice of his appointment, and, more
generally, whether equitable tolling would be warranted.

4

Tex. 1998).  Second, the district court analyzed the merits of Davis's ineffective assistance of counsel claims and found them to be lacking.  Based on these findings, the court dismissed the habeas petition.  The district court also denied Davis a certificate of appealability (COA) to appeal his denial of habeas relief to this Court.

## II.  DISCUSSION

Davis claims that the district court should have equitably tolled the applicable one-year limitations period rather than dismiss his petition as time-barred.  He also argues that he is entitled to a COA to appeal claims related to his underlying state-court conviction based on the Sixth Amendment right to the effective assistance of counsel.  Specifically, Davis argues that his attorney was ineffective in three situations--first, by failing to object to prosecutorial statements concerning youth as a mitigating factor; second, by inadequately defining the term "deliberate" for the jury; and third, by failing to offer certain testimony during the punishment phase of the trial.  We consider each issue in turn.

## A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Davis must obtain a COA in order to appeal the denial of his habeas petition.[3]  A COA may only be issued if the prisoner has made a "substantial showing of the denial of a

_____

[3] Because Davis filed his § 2254 petition in May 1998, the COA requirement of AEDPA applies to his case.  See Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997).

5

constitutional right."  28 U.S.C. § 2253(c)(2).  "A 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'"  Drinkard v. Johnson, 97 F.3d 751, 755 (5th Cir. 1996) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)), cert. denied, 117 S. Ct. 1114 (1997).

Davis's first contention is that the district court erred by dismissing his federal habeas claim as barred by the statute of limitations.  "When the district court dismisses a petition on procedural, nonconstitutional grounds, we employ a two-step COA process."  Robison v. Johnson, 151 F.3d 256, 263 (5th Cir. 1998) (reviewing district court dismissal of habeas petition as procedurally barred); see Murphy v. Johnson, 110 F.3d 10, 11 (5th Cir. 1997) (reviewing district court dismissal for non-exhaustion of state-court remedies).  First, we must determine if Davis has made a credible showing that his claim should not have been dismissed as time-barred.  See Robison, 151 F.3d at 263; Murphy, 110 F.3d at 11.  If Davis meets that requirement, we can then decide if his contentions regarding his underlying state court conviction raise a substantial showing of the denial of a constitutional right.  See Robison, 151 F.3d at 263; Murphy, 110 F.3d at 11.

B.  Statute of Limitations

Section 101 of AEDPA, incorporated as 28 U.S.C.

§ 2244(d)(1), included a one-year period of limitations within

which state prisoners could file federal habeas corpus

petitions.[4]  Specifically, § 2244(d) was amended to read:

> (1)  A 1-year period of limitation shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of--
>> (A)  the date on which the judgment became final
>> by the conclusion of direct review or the
>> expiration of the time for seeking such review;
>> (B)  the date on which the impediment to filing an
>> application created by State action in violation
>> of the Constitution or laws of the United States
>> is removed, if the applicant was prevented from
>> filing by such State action;
>> (C)  the date on which the constitutional right
>> asserted was initially recognized by the Supreme
>> Court, if the right has been newly recognized by
>> the Supreme Court and made retroactively
>> applicable to cases on collateral review; or
>> (D)  the date on which the factual predicate of
>> the claim or claims presented could have been
>> discovered through the exercise of due diligence.
> (2)  The time during which a properly filed application
> for State post-conviction or other collateral review
> with respect to the pertinent judgment or claim is
> pending shall not be counted toward any period of
> limitation under this subsection.

In this case, the Supreme Court denied Davis a writ of certiorari

on direct appeal in 1980, and his last state petition for a writ

of habeas corpus was decided in 1993.  Thus, under a literal

reading of § 2244(d), Davis's right to petition a federal court

for habeas relief terminated years before he filed his petition

---

[4] The addition of a period of limitations for federal habeas claims altered the habeas landscape significantly; before AEDPA there was no defined time limit on bringing § 2254 habeas claims. See Lonchar v. Thomas, 517 U.S. 314, 327 (1996); Brown v. Angelone, 150 F.3d 370, 371-72 (4th Cir. 1998).

7

in May 1998.  However, in <u>United States v. Flores</u>, 135 F.3d 1000, 1006 (5th Cir. 1998), we held that for § 2254 petitions, "one year, commencing on April 24, 1996, presumptively constitutes a reasonable time for those prisoners whose convictions had become final prior to the enactment of the AEDPA to file for relief."[5] We formulated the <u>Flores</u> rule to ensure that federal habeas claims were not retroactively time-barred before the effective date of AEDPA.  <u>See</u> <u>id.</u> at 1005.  Thus, Davis had until April 24, 1997 to petition a federal court for habeas relief.  <u>See</u> <u>Flanagan v. Johnson</u>, 154 F.3d 196, 202 (5th Cir. 1998) (holding that the limitations period for convictions becoming final before AEDPA's effective date ends April 24, 1997); <u>accord</u> <u>Ross v. Artuz</u>, 150 F.3d 97, 103 (2d Cir. 1998).

Davis failed to file his federal habeas claim until May 1998, after the limitations period had run, and the district court therefore dismissed his petition as time-barred.  Davis argues that the district court failed to consider whether the AEDPA limitations period should have been equitably tolled, and that his case presents an appropriate circumstance in which to equitably toll the statute of limitations to allow his habeas claim to proceed.

In order to decide the question of whether the AEDPA limitations period should have been equitably tolled in this

---

[5] Although <u>Flores</u> arose in the context of a § 2255 habeas claim, and not a § 2254 petition, as is the case here, we noted in that opinion that the April 24, 1996 finality date applied to both sections.  <u>See</u> <u>Flores</u>, 135 F.3d at 1003 n.7.

case, we must first determine whether the period is a statute of limitations or a jurisdictional bar. If the one-year filing period in § 2244(d)(1) is a limitation on the jurisdiction of federal courts, then federal courts lack the power to extend the period to allow for late adjudication of claims. However, if the AEDPA period is a statute of limitations, courts can, in extraordinary circumstances, allow late claims to proceed under the doctrine of equitable tolling. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." Lambert v. United States, 44 F.3d 296, 298 (5th Cir. 1995) (citing Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 428 (1965)).

Whether AEDPA's one-year limitations period limits federal court jurisdiction or is subject to equitable tolling is a question of first impression for this circuit. See Henderson v. Johnson, 1 F.Supp.2d 650, 653 (N.D. Tex. 1998). The only circuit courts to have considered the question have held that the AEDPA limitations period is not a jurisdictional bar. See Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 618 (3d Cir. 1998); Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, No. 98-5195, 1998 WL 407280 (Oct. 5, 1998); Calderon v. United States Dist. Court, 128 F.3d 1283, 1289 (9th Cir. 1997), cert. denied, 118 S. Ct. 899 (1998); cf. Henderson, 1 F.Supp.2d at 654 (holding that the limitation is not a jurisdictional bar); Parker v. Bowersox, 975 F. Supp. 1251, 1252 (W.D. Mo. 1997) (adopting the Calderon rationale and holding that the AEDPA

9

period is not jurisdictional).  We now join our sister circuits in concluding that AEDPA's one-year statute of limitations does not operate as a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled.

"The objective of a court called upon to interpret a statute is to ascertain congressional intent and give effect to legislative will."  Johnson v. American Airlines, Inc., 745 F.2d 988, 992 (5th Cir. 1984) (citing Philbrook v. Glodgett, 421 U.S. 707, 713 (1975)).  The clearest indication of congressional intent is the words of the statute itself.  See Hall Fin. Group, Inc. v. DP Partners, Ltd. Partnership (In re DP Partners Ltd. Partnership), 106 F.3d 667, 670 (5th Cir.), cert. denied, 118 S. Ct. 63 (1997).  When the language of a statute is unambiguous we must follow its plain meaning.  See Stiles v. GTE Southwest Inc., 128 F.3d 904, 907 (5th Cir. 1997).

A plain reading of the language of § 2244, which contains the AEDPA limitations period, leads to the conclusion that Congress intended that the limitations period be interpreted as a statute of limitations.  The limitations period does not "speak in jurisdictional terms" and does not explicitly refer to any limitations on jurisdiction.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982).  Instead, § 2244(d)(1) states only that "a 1-year period of limitation shall apply" and does not contain any restrictive language that would imply a limit on federal court jurisdiction.  The Supreme Court has held that limitations periods with even more limiting language than the

10

AEDPA provision could be equitably tolled.  See Burnett, 380 U.S. at 426 (holding that a limitations period mandating that "no action shall be maintained . . . unless commenced within three years from the day the cause of action accrued" was subject to equitable tolling).  In addition, the limitation period does not establish an absolute outside limit within which suits must be filed, as in the ERISA limitations period we recently found to be a statute of repose.  See Radford v. General Dynamics Corp., 151 F.3d 396, 400 (5th Cir. 1998).  In that case, we found that a limitations period mandating that "[n]o action may be commenced . . . after the earlier of" six years after the last violation or three years after discovery of the violation should be interpreted as a statute of repose that could not be equitably tolled.  29 U.S.C. § 1113; see Radford, 151 F.3d at 400; see also Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (holding that because a provision requiring that potential plaintiffs exhaust administrative remedies before bringing § 1983 civil rights suits did not use "sweeping and direct" language limiting federal jurisdiction, the provision was not a jurisdictional bar).  Section 2244(d)(1) does not prohibit the courts from entertaining actions after the statutory limit has passed; instead, it merely sets forth the relevant statute of limitations.  Therefore, the statutory language of § 2244(d)(1) indicates that Congress did not intend the limitations period to divest federal jurisdiction.

This interpretation of § 2244(d)(1) is consistent with a plain reading of AEDPA's placement within the federal habeas statute. When Congress amended the habeas corpus provisions by enacting AEDPA, it took care to separate jurisdiction provisions from this limitations-period provision. The explicit grant of jurisdiction to the district courts relating to the habeas writ is contained in 28 U.S.C. § 2241. Congress chose to insert the AEDPA limitation amendment into § 2244, which concerns the finality of determinations and contains provisions relating to non-jurisdictional limitations, such as restraints on duplicative and frivolous litigation. This plain reading of the statute as a whole implies that Congress did not intend by its choice of language and placement to limit federal jurisdiction through adoption of a one-year limitations period for federal habeas claims.

AEDPA's statutory language and construction clearly evinces a congressional intent to impose a one-year statute of limitations for the filing of federal habeas claims by state prisoners. We hold, therefore, that the one-year period of limitations in § 2244(d)(1) of AEDPA is to be construed as a statute of limitations, and not a jurisdictional bar. As such, in rare and exceptional circumstances, it can be equitably tolled. See Conaway v. Control Data Corp., 955 F.2d 358, 361-62 (5th Cir. 1992) (finding that because a limitations period is not a jurisdictional requirement, "the limitation statute is subject to estoppel and equitable tolling") (citing Zipes, 455 U.S. at

12

393); see also Calderon, 128 F.3d at 1289 ("[AEDPA's] one-year timing provision is a statute of limitations subject to equitable tolling, not a jurisdictional bar.").

We are persuaded that reasonable juries might differ with regard to equitably tolling the statute of limitations based on the extraordinary circumstances present in this case. Davis has therefore made a credible showing that the district court erred in dismissing his federal habeas petition as untimely. Following Robison and Murphy, we can now consider whether Davis has made a substantial showing of the denial of a constitutional right with respect to his underlying state court conviction. See Robison, 151 F.3d at 263; Murphy, 110 F.3d at 11.

### C. Ineffective Assistance of Counsel

Davis also claims that his trial counsel's performance denied him the effective assistance of counsel guaranteed by the Sixth Amendment. Davis asserts that his counsel rendered ineffective assistance by--first, failing to object when the prosecutor committed jurors to disregarding Davis's youth as a potential mitigating factor in deciding Davis's punishment; second, failing to object when the prosecutor equated the "intentional" standard used in the guilt-innocence phase of the trial with the "deliberate" standard used in the punishment phase; and third, failing to introduce certain oral testimony during the punishment phase of the trial.

To prevail on his ineffective assistance of counsel claims, Davis must demonstrate that his attorney's performance was

13

deficient, and that the deficiency prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient only when the representation falls below an objective standard of reasonableness.  See id. at 687-88.  Our review of the performance of Davis's attorney must be "highly deferential," and we must make every attempt to "eliminate the distorting effects of hindsight."  Id. at 689.  We must also maintain a "strong presumption that . . . the challenged action might be considered sound trial strategy."  Id. (internal quotation marks omitted).

To prove that his attorney's conduct prejudiced his defense, Davis "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Davis must therefore show that, absent his counsel's deficiencies, there is a reasonable probability that the jury would not have sentenced him to death.  See id. at 695.  A reasonable probability is a probability "sufficient to undermine confidence in the outcome."  Id. at 694.

The Texas Court of Criminal Appeals, in Davis's state habeas proceeding, has already considered the merits of and denied relief on each of Davis's Sixth Amendment claims.  See Ex parte Davis, 866 S.W.2d 234 (Tex. Crim. App. 1993).  We have previously found that an explicit denial of relief on the merits by the Texas Court of Criminal Appeals is an "adjudication on the

14

merits" entitled to deference under AEDPA.  28 U.S.C. § 2254(d); see Jackson v. Johnson, 150 F.3d 520, 523-24 (5th Cir. 1998).

We have determined that both prongs of the Strickland test involve mixed questions of law and fact.  See Nobles v. Johnson, 127 F.3d 409, 418 (5th Cir. 1997), cert. denied, 118 S. Ct. 1845 (1998).  Under the AEDPA deference scheme, a federal court will not disturb a state court's application of law to facts unless the state court's conclusions involved an "unreasonable application" of clearly established federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1); see Corwin v. Johnson, 150 F.3d 467, 471 (5th Cir. 1998); Nobles, 127 F.3d at 418.  An application of federal law is unreasonable when "'reasonable jurists considering the question would be of one view that the state court ruling was incorrect.'"  Corwin, 150 F.3d at 471-72 (quoting Drinkard, 97 F.3d at 769).  In addition, any state-court factual determinations must be presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Jackson, 150 F.3d at 524.

With this standard in mind, we now consider Davis's arguments.

### 1.  Youth as a mitigating factor

Davis's trial attorney did not object when the prosecutor instructed the jury on two occasions that Davis's youth could not be considered to be a mitigating factor in the punishment determination.  First, during voir dire, Davis's counsel did not object to the prosecutor obtaining commitments from each eventual

juror that he or she would not consider Davis's "youthful appearance and age," and commitments from one-half of the jurors not to consider any evidence of youth at all during punishment deliberations. Second, Davis's attorney also failed to object during the prosecutor's summation during the punishment phase of the trial, when the prosecutor reminded each juror of his or her commitment not to consider youth in selecting a punishment.[6] Davis argues that these failures constituted ineffective assistance of counsel in violation of the Sixth Amendment.

The Texas Court of Criminal Appeals held that this conduct by Davis's attorney did not prejudice Davis's defense. See Ex parte Davis, 866 S.W.2d at 239-40. The court noted that youth is only relevant as a mitigating factor to the second special issue, whether Davis would be dangerous in the future, and that a jury may find youth mitigating within that context only if it could find that a defendant's "violent conduct is a product of his youth, [and that] he may be expected to outgrow it." Id. at 240 (citing Johnson v. Texas, 509 U.S. 350, 368 (1993)). The state court found that the wealth of evidence presented during the punishment phase of the trial concerning Davis's extensive criminal past foreclosed any reasonable probability that the jury

---

[6] In relevant part, the prosecutor told the jury:

You promised me on voir dire that the age of the defendant was irrelevant, that the youthful appearance of a defendant was irrelevant. You told me that you could answer the questions based upon the evidence and not merely your personal desire. . . . My purpose in this argument is to hold you to that promise.

16

would have found Davis capable of reforming his conduct as he matured.[7]  See id. at 239-40.  Because "no other mitigating aspect of youth need have been considered," the court found that Davis's defense was not prejudiced and he therefore was not deprived of effective assistance of counsel under the Sixth Amendment.  Id. at 240.  We cannot say that this state-court conclusion involved an unreasonable application of the Strickland test.

The Supreme Court, in Johnson v. Texas, 509 U.S. 350, 368 (1993), articulated that "[t]he relevance of youth as a mitigating factor derives from the fact that the signature

_____

[7] Specifically, the Court of Criminal Appeals recounted that:

> the punishment phase of trial revealed that by the time he was ten years old [Davis] was skipping school and stealing bicycles.  At twelve he was sent to a detention home for boys for a year, and before he was fifteen he returned there twice.  At fifteen [Davis] landed in the reformatory at Gatesville for eighteen months.  At seventeen he was convicted of three instances of aggravated robbery and one instance of burglary of a habitation, and was assessed four concurrent six year sentences.  In one of the aggravated robberies [Davis] used a pistol, and when police tried to apprehend him, he took a hostage.  In another aggravated robbery he wielded a butcher knife.  At the time of his arrest for the instant offense [Davis] confessed that between the time of his parole and his arrest he committed at least five robberies and thirteen burglaries.  Only five days after killing Lang, [Davis] returned to burglarize the Red Wing Ice Cream Company.  [Davis] estimated that from the age of twelve up to the day of trial he had spent only a year and a half outside institutional walls.  He admitted that in this brief time he committed over twenty violent or potentially violent felony offenses.

Ex parte Davis, 866 S.W.2d at 239-40.

17

qualities of youth are transient; as individuals mature, the impetuousness and recklessness that dominate in younger years may subside." Thus, the state court did not err in determining that the relevant question under Strickland is whether the jury would have decided not to impose the death penalty after considering whether Davis's crime was a product of youthful immaturity. The prosecutor legitimately presented detailed evidence concerning Davis's extensive criminal past during the punishment phase of the trial that could have reasonably persuaded jurors that Davis's crime was not a product of his youth. Based on this evidence, we cannot say that the state court's determination that Davis's defense was not prejudiced by his attorney's failure to object to the prosecutor's statements was unreasonable. This conclusion was not "so clearly incorrect that it would not be debatable among reasonable jurists." Drinkard, 97 F.3d at 769; see Brock v. McCotter, 781 F.2d 1152, 1158 (5th Cir. 1986) (finding no Sixth Amendment violation after prosecutor improperly told juror that youth could not be considered a mitigating factor, as "where no reasonable person would view a particular fact as mitigating it may properly be excluded as irrelevant"). Therefore, we decline to issue Davis a COA on this ground.

### 2. Intentional versus deliberate conduct

Davis next claims that because his counsel inadequately maintained the distinction between an intentional and a deliberate killing, he was denied effective assistance of counsel under the Sixth Amendment. The prosecutor told eight eventual

18

jurors that "deliberate" meant nothing more than purposeful, and during his punishment-phase summation, he told the jurors that because they had found Davis's killing to be intentional in the guilt-innocence phase of the trial, they had already decided that the killing was deliberate. Davis's attorney failed to object to these prosecutorial statements. Davis also claims that his attorney did not distinguish between the two terms during his cross-examination of Davis during the punishment phase of the trial and that he confused the terms in his final summation.

The Texas Court of Criminal Appeals found that the failure of Davis's attorney to distinguish between "intentional" and "deliberate" was not deficient under the first Strickland prong. See Ex parte Davis, 866 S.W.2d at 241. The state court found that at the time of Davis's trial in 1978, Texas courts had not yet explicitly articulated a distinction between the two terms. See id. at 240-41. Therefore, the failure of Davis's attorney to distinguish between them was objectively reasonable and could not constitute constitutionally defective assistance of counsel. See id. at 241. We find that this state-court conclusion is a reasonable application of Strickland.

It was not until 1981, when the Texas Court of Criminal Appeals decided Heckert v. State, 612 S.W.2d 549 (Tex. Crim. App. 1981), that Texas law clearly distinguished "deliberate" from "intentional" conduct.[8] Before that time, even the Texas Supreme

_____

[8] The Heckert court found that the two standards were not identical. See Heckert, 612 S.W.2d at 552-53. Later Texas cases have made clear that "deliberate" is a higher standard than

19

Court used the terms interchangeably.  See Blansett v. State, 556 S.W.2d 322, 327 n.6 (Tex. Crim. App. 1977); see also Morin v. State, 682 S.W.2d 265, 271 (Tex. Crim. App. 1983) (Clinton, J., dissenting) (noting that before Heckert, the terms were not precisely distinguished).  Given the lack of clarity between the two terms at the time of Davis's trial, we cannot say that the state court was unreasonable in holding that Davis's attorney was not deficient under Strickland.  See Williams v. Scott, 35 F.3d 159, 164 (5th Cir. 1994) (finding that because "no definite distinction between deliberately and intentionally had been authoritatively expressed" before defendant's 1981 trial, defendant's counsel was not deficient for failing to object to statements equating the two terms); cf. Motley v. Collins, 18 F.3d 1223, 1227 (5th Cir. 1994) (finding no Strickland violation when defendant's attorney failed to object during voir dire to prosecutor's statements equating intentional and deliberate where the defendant "has not shown how a more favorable definition of 'deliberately' would have caused at least one juror to return a negative answer to the first special issue") (footnote omitted); Landry v. Lynaugh, 844 F.2d 1117, 1120 (5th Cir. 1988) (finding no Strickland prejudice when attorney did not object to prosecutor's voir dire statements equating intentional and deliberate).  Davis's request for a COA on this issue is therefore denied.

---

"intentional," only encompassing conduct that results from a "determination on the part of an actor to kill."  Cannon v. State, 691 S.W.2d 664, 677 (Tex. Crim. App. 1985).

### 3. Failure to introduce oral testimony

Lastly, Davis complains that his trial counsel was ineffective because he did not attempt to introduce certain oral testimony during the punishment phase of the trial. During the guilt-innocence portion of the trial, Davis's attorney attempted to introduce the testimony of Detective John Deloney, the detective to whom Davis orally confessed the day before Davis made a written statement. The testimony Davis's attorney attempted to elicit related to Davis's state of mind at the time of the shooting. Specifically, Deloney would have testified that Davis told him he thought Lang, the victim, was coming after him to take the gun, and that Davis had remarked, "I had to shoot the man. He was going to take the gun away from me." These assertions were not in Davis's written confession. The trial judge excluded the testimony as irrelevant to the issue of guilt or innocence, and Davis's counsel did not attempt to introduce the testimony during the punishment phase of the trial.

Davis asserts that Deloney's testimony was relevant to the first capital sentencing issue of deliberateness. He contends that the testimony evidences a lack of premeditation and planning concerning the killing, and therefore the jury should have been able to consider the testimony and credibility of the detective. The failure of his attorney to introduce the testimony, Davis argues, amounted to ineffective assistance of counsel in violation of the Sixth Amendment.

21

The Texas Court of Criminal Appeals disagreed, finding that Davis had not overcome the Strickland presumption that the decision not to call Deloney was part of his attorney's trial strategy. See Ex parte Davis, 866 S.W.2d at 242. The state court noted that Davis's attorney had already introduced testimony similar to Deloney's proposed testimony during both the guilt and punishment phases of Davis's trial. See id. The court found that the attorney's decision not to elicit Deloney's testimony during the punishment phase was consistent with his apparent trial strategy of having Davis "acknowledge all guilt as a predicate to rehabilitation" in an effort to persuade the jury that Davis would not be dangerous in the future. Id. The Court of Criminal Appeals then denied Davis relief because he did not overcome the presumption, explicit in Strickland, that his attorney "'made all significant decisions in the exercise of reasonable professional judgment.'" Id. (quoting Strickland, 466 U.S. at 690).

We find the state court's conclusion that Davis was not denied effective assistance of counsel because of his attorney's failure to introduce Deloney's testimony to be a reasonable application of Strickland. The Court of Criminal Appeals stated that Davis's counsel "was clearly attempting to paint his client as a penitent, willing to take responsibility for his offense, and therefore capable of rehabilitation." Id. at 239. Deloney's testimony implied that after the killing, Davis thought the death was the victim's fault--he stated that he "had to shoot [Lang]"

22

because "[h]e was going to take the gun away from me."  The state court did not unreasonably apply <u>Strickland</u> in indulging a strong presumption that Davis's attorney's failure to introduce Deloney's statement therefore "might be considered sound trial strategy."  <u>Strickland</u>, 466 U.S. at 689 (internal quotation marks omitted); <u>see also</u> <u>Duff-Smith v. Collins</u>, 973 F.2d 1175, 1183 (5th Cir. 1992) (finding that decision not to offer potentially damaging testimony was protected as trial strategy).  Because Davis has not attempted to rebut this presumption, after applying AEDPA's deferential standard of review we cannot say that the state court erred in denying Davis's requested relief, and we decline to issue a COA on this issue.  <u>Cf.</u> <u>Teague v. Scott</u>, 60 F.3d 1167, 1172 (5th Cir. 1995) ("A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with an obvious unfairness.") (internal quotation marks omitted).

## III.  CONCLUSION

For the foregoing reasons, we DENY Davis's request for a certificate of appealability and VACATE our grant of a stay of his execution.

23