UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-11358
_____

ANDREW FLORES CANTU-TZIN,

                                        Petitioner-Appellant,

                        versus

GARY JOHNSON, DIRECTOR
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
December 2, 1998

Before JONES, BARKSDALE, and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

        Appellant Cantu is scheduled for execution by the State of Texas on December 3, 1998, for the June, 1990 murder-for-hire of three members of an Abilene family.  He has filed neither state nor federal habeas petitions seeking to vacate his capital murder conviction.  Instead, he filed in the federal district court only a motion to stay execution and for appointment of counsel, and those requests were initiated after his right to obtain federal relief has facially prescribed.

        Cantu has moved this court for a stay of execution and appointment of counsel on appeal.  We granted the motion for

appointment of counsel on appeal, as the sole issue with which counsel is here concerned is the applicability of the statutory time bar.[1]

Cantu's petition for federal habeas relief indisputably falls outside the one-year limit prescribed by Congress in the Antiterrorism and Effective Death Penalty Act ("AEDPA") in order to bring regularity and finality to federal habeas proceedings. Cantu does not contest that his petition is facially untimely. Instead, he argues that the district court erred by failing to appoint him counsel under 21 U.S.C. § 848(q)(4)(B) and that it further erred in ruling on the limitations issues without allowing Cantu an opportunity to respond and without appointing counsel. Three questions are raised by Cantu's position: (1) whether the <u>McFarland</u> case requires appointment of counsel for a death-row prisoner whose petition is time-barred by AEDPA;[2] (2) whether, under a narrow reading of <u>McFarland</u>, § 848(q)(4)(B) counseled appointment of counsel at least concerning the possibility of equitable tolling of the statute of limitations; and (3) whether, given the undisputed facts surrounding the progress of Cantu's case in state and federal courts, no ground for equitable tolling or for a stay of execution exists.

Our conclusions may be succinctly stated. First, neither <u>McFarland</u> nor § 848(q)(4)(B) requires appointment of counsel for

---

[1]On November 30, 1998, Mandy Welch and A. Richard Ellis were appointed as counsel on appeal for these purposes.

[2]<u>McFarland v. Scott</u>, 512 U.S. 849, 114 S.Ct. 2568 (1994).

2

the wholly futile enterprise of addressing the merits of a time-barred habeas petition.  Second, the court may appoint counsel to represent a death-row inmate for purposes of litigating the applicability of the limitations bar only, with sufficient time constraints to maintain the integrity of the limitation period.  Third, where, as in this case, the facts that might be relevant to equitable tolling of limitations are undisputed and are wholly unfavorable to the petitioner, the court may deny a stay.  We therefore deny the stay of execution.

BACKGROUND

Cantu is no stranger to self-representation.  He dismissed his court-appointed attorney and represented himself on direct appeal to the Texas Court of Criminal Appeals.[3]  His direct appeals terminated with the denial of certiorari by the Supreme Court in February, 1995.  See Cantu v. Texas, 513 U.S. 1171, 115 S.Ct. 1145.

Cantu never filed a petition for state habeas relief.  Rather, after eluding the first execution date,[4] he sought appointment of counsel in the state court system.  His first attorney was forced to withdraw because of a conflict of interest,

---

[3]Counsel was appointed for him in a motion for rehearing in the Texas Court of Criminal Appeals and on the petition for certiorari.

[4]In 1995, Cantu filed a motion for stay and appointment of counsel in federal district court, following the procedure set forth in McFarland, 512 U.S. at 852 n.1, 114 S. Ct. at 2570 n.1. The case was voluntarily dismissed, however, when the State of Texas passed a law affording court-appointed counsel for state habeas proceedings to indigent death-row inmates.

3

but his second attorney cited "irreconcilable differences" with Cantu and was permitted to withdraw. Cantu requested discharge of Ingalsbe, his third court-appointed attorney, because Cantu thought for various reasons that Ingalsbe was not representing him effectively. A state court hearing was held in August 1997 in response to Cantu's self-styled "Motion for the Dismissal of State Habeas Counsel and for Self-Representation." The state trial court found that Cantu preferred to proceed pro se if his only choices were to continue to be represented by Ingalsbe or by any other attorney from Abilene; that Cantu did not want to be represented by Ingalsbe or any other attorney from Abilene; that Cantu was capable of representing himself in a post-conviction proceeding; and that Cantu knowingly and voluntarily waived the right to counsel if his only other choices were to be represented by Ingalsbe or another Abilene attorney. These findings, referred to the Texas Court of Criminal Appeals, resulted in an order discharging Ingalsbe on September 3, 1997, and permitting Cantu to proceed pro se.

After the September 3, 1997 order, Cantu and a would-be habeas attorney filed motions requesting the Texas Court of Criminal Appeals to reconsider appointment of counsel, but their motions were denied on November 19, 1997. Cantu then did nothing.

On October 14, 1998, more than a year after Cantu had been instructed to proceed pro se, the state convicting court set his execution date for December 3, 1998. Cantu filed a motion for appointment of counsel and stay of execution in the federal district court on November 3, 1998. Relying on McFarland, 512 U.S.

4

849, 114 S. Ct. 2568, Cantu asserted his right to counsel in advance of filing a habeas petition on the merits. The state responded by urging application of AEDPA's one-year limitation on federal habeas petitions, 28 U.S.C. § 2244(d)(1), and the consequent inapplicability of McFarland. The state did not, however, contest the appointment of counsel solely for the purpose of representing Cantu in the resolution of the statute of limitations issue.

On November 14, 1998, the district court entered an order finding that Cantu "engaged in dilatory tactics which allowed the one-year limitations period established by the Anti-Terrorism and Effective Death Penalty Act to expire." Cantu v. Johnson, No. 98-CV-236-c (N.D. Tex. Nov. 14, 1998) (order denying appointment of counsel and stay of execution). The court further concluded that Cantu had "'flout[ed] the available processes' with his inaction and dilatory tactics." Id., quoting McFarland, 512 U.S. at 858, 114 S. Ct. at 2573. On this basis, the court denied the motions for appointment of counsel and for stay of execution, and it denied a certificate of appealability.

DISCUSSION

There can be no doubt that Cantu's attempt to invoke federal habeas jurisdiction is time-barred. The AEDPA, which became effective April 24, 1996, enacted a one-year period of limitation for federal habeas proceedings that runs, unless tolled, from the date on which the petitioner's conviction became final at the conclusion of direct review or during the pendency of a

5

"properly filed application for State post-conviction or other collateral review." § 2244(d)(2).  28 U.S.C. § 2244(d)(1)(A).[5] Cantu's judgment became final on February 21, 1995.  A strict construction of the statute would have prevented his seeking federal habeas relief after February 21, 1996, two months prior to enactment of the AEDPA.  The Fifth Circuit has, however, permitted petitioners a "reasonable time" after enactment of the statute, i.e. until April 24, 1997, to file their habeas applications.  See Flanagan v. Johnson, 154 F.3d 196, 200 (5th Cir. 1998).  Further, in "rare and exceptional circumstances," this court has held that the one year limitations period may be equitably tolled.  Davis v. Johnson, 158 F.3d 806, ___ (5th Cir. 1998), petition for rehearing pending.

In an additional twist favorable to Cantu, the Texas Attorney General's office agreed in a class action settlement to toll the time from request until appointment of state habeas counsel in the Texas Court of Criminal Appeals, for petitioners like Cantu who did not have a state writ of habeas corpus pending on December 2, 1996.  Pyles v. Morales, No. 396-CV-2838-D (N.D.Tex. Dec. 2, 1996) (Agreed Order of Dismissal Without Prejudice).  A generous reading of the Pyles agreement suggests that Cantu's state proceedings regarding appointment of counsel would not be counted for limitations purposes until the Court of Criminal Appeals

---

[5]Other triggering provisions for the one-year bar, contained in subsections (B), (C), and (D) of § 2244(d)(1), are not material here.

ordered Cantu to proceed pro se on September 3, 1997.[6]  Applying the AEDPA limitations period of one year from that date, it could be determined that Cantu could have filed a timely federal petition for writ of habeas corpus until September 3, 1998.

Instead, from September 3, 1997 until today, Cantu has never filed a petition for habeas relief in either state or federal court.  The express AEDPA limitation has clearly expired.

Applying the McFarland decision with full force to this case cannot be correct.  In McFarland, the Supreme Court interpreted 28 U.S.C. § 848(q)(4)(B), the statute affording court-appointed counsel to death row habeas petitioners, both to initiate a federal habeas proceeding and to authorize in most instances, the granting of a stay of execution even before a petition on the merits had been filed.  McFarland, however, predates AEDPA's passage of a specific habeas limitation period, and even though AEDPA did not expressly modify the death row petitioner's right to counsel, it took the more onerous step of cutting off the availability of any federal court review after the limitation has run.  Appointment of counsel for a capital-convicted defendant would be a futile gesture if the petitioner is time-barred from seeking federal habeas relief.  Moreover, granting a stay of

---

[6]Other interpretations of the Pyles agreement are possible.  For instance, it could be decided that the tolling there authorized ceased to run upon the appointment of Cantu's second habeas counsel, who was later dismissed for "irreconcilable differences." If so, the AEDPA limitation would have ended several months earlier than the date we have calculated.  As the State suggests, it is unnecessary for us to construe the impact of the Pyles agreement definitively, and we have not done so.

execution in such circumstances would directly undermine Congress's purpose in passing a statute of limitations.

Indeed, confirmation that a statutory limitations period should be enforced appears in the Supreme Court's later decision in Lonchar v. Thomas, 517 U.S. 314, 116 S.Ct. 1293 (1996). The tenor of the majority discussion in Lonchar is that federal courts should not intervene to create equitable reasons for denying stays of execution when federal law and the habeas rules have prescribed principles applicable to the complex mix of equities in capital cases. See id. 517 U.S. at 326-27, 116 S. Ct. at 1301. By the same token, however, when Congress has stepped in to balance the competing interests, as it did in AEDPA, courts should be loath to evade that balance. McFarland, which represents a judicial gloss on the appointment-of-counsel statute, should not impede application of a later-enacted limitation period on federal habeas relief.

This is not to say that death row inmates may never file initial federal habeas petitions more than one year after the conclusion of direct or collateral review proceedings. First, the conditions to the one-year bar contained in § 2244(d)(1) may apply. See supra note 5. Second, this court has recently held that the limitations period of AEDPA is subject to "equitable tolling" in "rare and exceptional circumstances." Davis, 158 F.3d at ___. Where a petition lends itself to the interpretation that rare and exceptional circumstance may pertain, and hence that the petitioner is entitled to seek federal relief on the merits, a narrower

8

reading of McFarland may require appointment of counsel solely to resolve limitations questions. While the delay occasioned by appointment of counsel and determining the application of the statute of limitations would marginally infringe the AEDPA limit, these delays fulfill a long-recognized exception to limitations statutes. See id. 158 F.3d at ____. Further, appointment of counsel on such a limited basis may be handled expeditiously by the trial court and with due regard for Congress's intent to circumscribe federal habeas relief.

But even if we incorrectly surmise that a broad reading of McFarland is generally inconsistent with the enactment of § 2244(d), McFarland still does not guarantee an automatic stay of execution for capital defendants. While McFarland ensures a right to counsel that "necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims," it also emphasizes that the grant of a stay is ultimately discretionary. McFarland, 512 U.S. at 858, 114 S. Ct. at 2573. As a result,

> If a dilatory capital defendant inexcusably ignores this opportunity [to secure counsel] and flouts the available processes, a federal court presumably would not abuse its discretion in denying a stay of execution.

Id.

The record of proceedings in the state court, which was furnished to the district court and this court during the course of Cantu's attempt to secure federal habeas relief, demonstrates his

9

disdain for and lack of cooperation with state access-to-counsel procedures and the AEDPA deadline.

Over thirteen months, from August 1996 to September 1997, Cantu was appointed three separate attorneys to represent him in state post-conviction proceedings. One cited irreconcilable differences with Cantu. The last one was dismissed at Cantu's request. Cantu insisted on trying to call the shots with the state courts when he insisted that Ingalsbe, the third lawyer, should no longer represent him, and further that no attorney from Abilene should be appointed to represent him, although the crime occurred in Abilene and the convicting court was located there, and that he would rather represent himself than endure those alternatives. He should not be heard to complain that the Texas courts found him capable of self-representation and then allowed him to undertake it, as he requested exactly that relief and had previously dismissed a court-appointed counsel and represented himself on direct appeal. Yet Cantu persisted in complaints that a fourth lawyer should be appointed for him. Cantu thus flouted the state court's procedures and passed up the opportunity to pursue habeas relief on the merits.

Cantu's appellate counsel suggest that fact issues exist that would predicate equitable tolling on the state's failure to appoint Cantu a competent habeas counsel. He supports this position in two ways. First, he implies that Ingalsbe, the third state-appointed attorney, was incompetent. This attack grossly mischaracterizes Ingalsbe's experience as a district attorney,

criminal law practitioner for over 20 years, 1967 graduate of Baylor Law, and participant in capital and habeas cases. As the state court found, Ingalsbe had obtained Cantu's file from the Texas Resource Center and was reviewing it before Cantu moved to dismiss him. He testified that he planned to file a habeas petition within the deadline set by the Texas Court of Criminal Appeals.

Second, Cantu assaults the Texas courts' findings that he was capable of self-representation and voluntarily elected that option rather than to have Ingalsbe or any Abilene attorney represent him. Inmates are not entitled to court-appointed counsel of their choice. United States v. Breeland, 53 F.3d 100, 106 n.11 (5th Cir. 1995); Malcom v. State, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982). Cantu chose self-representation rather than the choice he was offered by the state. The circumstances that Cantu alleges to support equitable tolling thus rest on an incomplete recitation of the record, backtracking on his expressed choice of self-representation, and a misunderstanding of an inmate's ability to control the choice of court-appointed counsel.

His approach to the federal courts has been no more praiseworthy. A bevy of pleadings filed with the Texas Court of Criminal Appeals throughout 1997 demonstrates that Cantu was well aware of the AEDPA limitation period for seeking federal habeas relief. See Appellant's Objection to Court's September 2, 1997 Findings, Record at Tab 16 n.1, Cantu v. Texas (No. 71,314); Hearing Requesting Self Representation, Record at Tab 13 p. 6 (No.

11

10,172-B); Motion to File Skeletal Application for Writ of Habeas Corpus, Record at Tab 21 p.6-7 (No. 71,314). He was also aware of the Pyles agreement extending the AEDPA limit under certain circumstances. See Record at Tab 21 p.6 (No. 71,314). Once he was ordered to proceed in habeas pro se, however, Cantu did nothing. He did not preserve his collateral review rights in state court, which would have tolled the AEDPA limitation, and he made no effort to obtain federal relief for over a year, until after an execution date had been scheduled and after the AEDPA deadline had unquestionably passed.

Cantu's course of conduct demands application of the exception to McFarland, if McFarland would otherwise apply here. Further, it contradicts any possibility that equitable circumstances exist which might authorize a tolling of the AEDPA limitation period.

For all of these reasons, we conclude that any attempt by Cantu to seek federal habeas relief at this point is time-barred under the limit expressly contained in AEDPA, this court's caselaw, and a generous interpretation of the Pyles agreement; that Cantu was not entitled to appointment of counsel on the merits of a habeas petition, although he may have been entitled to be represented by counsel for the sole purpose of litigating the limitation issue; and that the fully-developed record of state proceedings demonstrates the unavailability of equitable tolling of the AEDPA limitations period.

12

We **DENY** Cantu's request for a stay of execution; motion for appointment of counsel on appeal, limited to the issues before us is **GRANTED**. To the extent a certificate of appealability is necessary, although it was not requested by petitioner, it is **DENIED**.

ENDRECORD

BENAVIDES, Circuit Judge, dissenting:

The motion by Andrew Flores Cantu-Tzin ("Cantu") for appointment of counsel and a stay of his execution pending his filing of a federal habeas petition was denied by the district court because the court found that Cantu "engaged in dilatory tactics which allowed the one-year limitations period established by the Anti-terrorism and Effective Death Penalty Act to expire." The majority affirms that decision based on its finding that appointing counsel and granting a stay in order to address the merits of Cantu's time-barred habeas petition would be a "wholly futile enterprise" because there is no possibility that equitable circumstances exist which might authorize a tolling of the AEDPA limitation period. Although the majority's ultimate conclusion that Cantu's habeas petition would be barred by AEDPA might be correct, I dissent because the majority makes this determination without Cantu having properly been granted his statutory right to the assistance of counsel.

In McFarland v. Scott, 512 U.S. 849, 114 S. Ct. 2568 (1994), the Supreme Court construed 21 U.S.C. § 848(q)(4)(B), which entitles indigent capital defendants to representation on federal collateral review, as directing that "the right to appointed counsel adheres prior to the filing of a formal, legally sufficient habeas corpus petition." Id. at 855, 114 S. Ct. at 2572. Neither the Court in McFarland nor the text of § 848(q)(4)(B) conditions this right to assistance of counsel in

14

any way, and it was improper for the district court to have denied it on the basis of Cantu's supposed "dilatory tactics." Furthermore, the majority's suggestion that AEDPA's one-year limitation period on filing habeas petitions restricts the right to assistance of counsel to defendants who file a habeas petition within the one-year period is inconsistent with our recent decision in Davis v. Johnson, No. 98-20507, 1998 WL 733731 (5th Cir. Oct. 21, 1998). There, we joined our sister circuits in holding that "AEDPA's one-year statute of limitations does not operate as a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled." Id. at *4. By finding that there is no right to counsel where the one-year limitation period has lapsed, the majority undermines McFarland and Davis by eliminating indigent capital defendants' right to have counsel assist them in demonstrating the exceptional equitable circumstances that could require tolling the limitations period.

In McFarland, the Supreme Court also reaffirmed the district courts' jurisdiction to stay executions because "the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims." McFarland, 512 U.S. at 858, 114 S. Ct. at 2573. The Court provided an exception to the general rule that an execution must be stayed to provide time for adequate representation by counsel where "a dilatory capital defendant inexcusably ignores this opportunity and flouts the available processes." Id. at

15

858, 114 S. Ct. at 2573.  Nonetheless, the majority errs by finding that the district court could properly apply that exception to this case without first appointing counsel to represent Cantu or conducting an evidentiary hearing.  First, by improperly denying Cantu the assistance of counsel, the district court denied him the opportunity to present the strongest legal arguments that he had neither been dilatory nor flouted the available habeas procedures.  Without the benefit of having such arguments before it, the district court was unable to assess properly whether Cantu's failure to file an earlier habeas petition was inexcusable or not.  Second, without holding an evidentiary hearing, the district court could not properly find that Cantu either had been dilatory or had flouted the available habeas procedures.  Of the three attorneys that represented Cantu in his state post-conviction proceedings, two were dismissed solely upon motion by the attorney.  The third, Ingalsbe, was dismissed upon Cantu's request, but the record suggests that Ingalsbe failed to make any substantial steps toward filing any habeas relief on behalf of Cantu.  Although there is evidence that Cantu did agree to represent himself *pro se* instead of continuing to be represented by Ingalsbe or another attorney from Abilene, several motions filed by Cantu after Ingalsbe was dismissed indicated that Cantu still desired to be represented by counsel.  Less than a year lapsed from the filing of the last of these motions in state court until Cantu filed his motion in federal court for the appointment of counsel and a stay of his

16

execution.  Without an independent inquiry into the facts underlying these events, it was an abuse of discretion for the district court to have presumed that Cantu was being inexcusably dilatory and was flouting the habeas procedures instead of reasonably seeking representation and assistance in filing for habeas relief.

The Supreme Court has noted that "[d]ismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty."  Lonchar v. Thomas, 517 U.S. 314, 324, 116 S. Ct. 1293, 1299 (1996).  For that reason, it is improper for this court to deny Cantu's single chance at federal collateral review of his state death penalty conviction without ensuring that he had a sufficient opportunity to be assisted by counsel in seeking that review.  Refusing him such assistance undermines his statutory right under 21 U.S.C. § 848(q)(4)(B), ignores prior precedent of the Supreme Court, undermines a prior decision of this Court, and ultimately denies Cantu due process under the law.  I would grant Cantu the stay of execution and remand this case to the district court for him to be appointed counsel solely for the purpose of defending against the state's claim that his habeas corpus petition would be time barred.  Only by allowing Cantu to have counsel on the issue of limitations can it be assured that his right to have counsel assist him in this, his first federal

habeas corpus challenge to a death penalty conviction, will not be infringed.