IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

―――――――――――――――

No. 98-50485

―――――――――――――――

JERRY McFADDEN

                                        Petitioner-Appellant

versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

                                        Respondent-Appellee

―――――――――――――――

Appeal from the United States District Court
For the Western District of Texas

―――――――――――――――

January 29, 1999

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Jerry McFadden appeals the district court's denial of his petition for federal habeas. McFadden attacks his conviction of capital murder and sentence of death by a Texas jury, contending that the state trial judge applied an incorrect constitutional standard in excluding two prospective jurors in the course of jury selection without insisting on a focus upon the juror's ability to answer the sentencing questions. We are not persuaded the exclusions were error, and we affirm the denial of the petition.

I

On July 14, 1987, a jury in Bell County, Texas, convicted McFadden of murdering Suzanne Harrison in the course of an aggravated sexual assault. On affirmative answers to the requisite questions asked the jury in the sentencing phase, the state district judge sentenced McFadden to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence in an unpublished opinion on May 26, 1993, and denied rehearing on November 3, 1993. McFadden filed his initial application for habeas relief in the state trial court, which was overruled by operation of law. The Texas Court of Criminal Appeals denied relief on January 22, 1997, and a week later McFadden filed a second application for habeas relief, which the Texas appellate court dismissed for abuse of the writ on March 12, 1997. On April 11, 1997, McFadden petitioned the federal district court for habeas relief, which was denied in 1998. The district court granted a certificate of appealability and denied motions to amend its judgment on June 15, 1998.

II

This appeal is controlled by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996. AEDPA's compelled deference to decisions of state courts is now familiar. Under 28 U.S.C. § 2254(d), a writ of habeas corpus shall not be granted with respect to a claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

2

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As we will explain, McFadden has failed to demonstrate that the determination by the Texas Courts of his claims of error, sustaining the state's challenges for cause to two members of the venire, Segura and Locklear, were unreasonable in light of the evidence or contrary to clearly established federal law as determined by the Supreme Court of the United States.

III

For some time under the Witherspoon standard,[1] we were compelled to engage in a nigh de novo review of the jury selection process in capital cases. The exercise was difficult for our court and insulting to the state systems. Attempting a wholly fresh review from so distant a point of the certainty of view expressed in a voir dire examination of prospective jurors ignored the realities of trial. It looked aside from the limited capture by a transcript of courtroom exchanges, bereft as they are, of inflection, pause, facial expression, and body language. What was clear to all at trial can become clear to none with only the transcript to read. This opaqueness is inherent in the difficulties of probing for the views of a lay person about death

---

[1]Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770 (1968).

and crime in the unfamiliar and tense environment of a courtroom in a capital case. Wainwright v. Witt, 469 U.S 412, 424-26 (1985), confronted this difficulty:

> This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... [T]his is why deference must be paid to the trial judge who sees and hears the juror.

Justice Rehnquist's opinion for the court also recognized that a trial judge cannot be expected to dictate findings of fact and conclusions of law with each ruling. Hence, under Witt the sustaining of a challenge for cause for bias was held to be an implicit finding of bias enjoying the statutory presumption of correctness. See at 430. The laconic "sustained" or "granted" carries that force.

McFadden urges that despite Witt, the decisions by the state trial judge to sustain the state's challenges for cause to Locklear and Segura, prospective jurors, are not due deference. No deference due because, McFadden contends, the voir dire did not specifically exclude the possibility that the excluded prospects could have answered the questions required by Texas in the

4

sentencing phase despite their expressed views regarding the death penalty. We turn first to the relevant portions of the voir dire.

IV

Locklear quickly responded: To the prosecutor's questions about the death penalty, "I don't believe in it." The questioning continued:

> Q: That's fine, if you don't then I need to ask you a few more questions, but let me just be sure I understand and know where you stand on it. If I'm understanding correctly, you simply are opposed to the death penalty, is that correct?
>
> A: Yes sir.
>
> Q: And that is regardless of how serious or vicious the facts of the case might prove to be, under no set of circumstances could you sit on a jury and make decisions that would result in a death verdict, is that correct?
>
> A: Yes sir.
>
> Q: Can I assume that your opposition to the death penalty is based on feelings you have and scruples you have that would just keep you from ever voting death in a case regardless of how vicious the fact situation was?
>
> A: No sir, it's just that the Lord says he will take vengeance in his own hands.
>
> Q: So it's a religious feeling that you have, and it's your religious belief that keeps you, or has you opposed to the death penalty, is that right?
>
> A: Yes sir.
>
> Q: And I presume that nothing would change your mind in that regard, is that correct?
>
> A: Right.

5

Q: And that under no circumstances, because of your religious belief against the death penalty, that under no circumstances, <u>under no procedure would you ever be a part of a jury that would make decisions that would result in a death sentence, is that correct</u>? (emphasis supplied)

A: Yes sir.

8 Sr 1702-03. The state then challenged Locklear for cause. After objections concerning the procedure for conducting the voir dire in the case, McFadden's counsel asked Locklear several questions, including the following:

Q: Are you telling us that if that judge ordered you in his instructions to the jury to consider fairly and unbiased (sic) the penalty range for an allegation of criminal misconduct that included the death penalty that you would ignore that instruction?

A: Yes, I would.

V

Segura's opening response was:

A: I think if he committed it, for sure, I think he should suffer in jail and be punished for it instead of just terminating his life.

The questioning continued:

Q: Are you a person who because of strong feelings that you have, religious feelings perhaps, conscientious scruples, are you a person who is opposed to the death penalty?

A: In a way. It just depends on what they did. Like if he killed one person I think he should suffer for it, but now if he killed three, four, or five people, then he should die; but for one person I don't think he should die.

6

Q: Let me be sure that I understand you correctly. He is charged with taking the life one (sic) person, Suzanne Denise Harrison. Do I understand you correctly to say that you would be conscientiously opposed to the death penalty in any case where the defendant only killed one person?

A: Yes.

* * *

Q: ...[A]re you saying that regardless of how aggravated the facts and circumstances of the case, that if we convinced you that a defendant committed capital murder, but only killed one human being, as is charged in this indictment, regardless of how aggravated the facts and the circumstances, that you would never vote the death penalty?

A: Right.

* * *

Q: And these feelings that you have, these conscientious feelings that you have against the death penalty in that kind of situation [where the defendant killed only one person], is it fair to say that you honestly could not set those feelings aside and be a part of a jury in a case in which the result of that process would be the death penalty for a person charged and convicted of killing one person, is that correct? (emphasis supplied)

A: I believe that's correct.

Q: So that in a situation where we convinced you beyond a reasonable doubt that the defendant was guilty of capital murder of one person, you would automatically vote against the death penalty, is that correct?

A: Yes.

Q: Regardless of the facts and circumstances of the case?

7

A:    Yes.

McFadden's counsel did not examine Segura, and the prosecution's challenge for cause was sustained.

VI

Witt set the applicable constitutional rule: "[T]he quest is for jurors who will conscientiously find the facts and apply the law. That is what an 'impartial' jury consists of ...." Witt, 469 U.S. at 423. "[T]he proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment ... is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Id. at 424.

McFadden contends that the state trial judge applied an incorrect standard in sustaining the prosecutor's challenges for cause of both Segura and Locklear.  Of course, the trial judge did not recite the standard he was employing, so the contention is that in the absence of a recitation of the measure employed, we should presume that the trial judge followed then applicable state law. The argument continues that Texas law then set the measure as whether the juror could consider the full range of punishment; jurors could be excluded even though they could answer the sentencing questions.

This contention is without merit.  First, as the district court pointed out in its thoughtful memorandum, we have rejected

8

the suggestion that <u>Witt</u> requires that veniremen be explicitly asked if they could answer the sentencing questions despite their other reservations. See <u>Fuller v. Johnson</u>, 114 F.3d 491, 500 (5th Cir.), <u>cert. denied</u>, 118 S.Ct. 399 (1997). In any event, it was reasonable for the trial judge to conclude that Locklear and Segura would not be able to give an affirmative answer to the sentencing questions.

The voir dire developed whether the jurors could be part of a jury in which the result of that process would be the death penalty. There is no uncertainty about the views of Segura and Locklear. Both made plain that they were unable to apply the law to the facts free of bias, a bias rooted in their opposition to the death penalty, and that neither could participate in a process producing a death sentence.

<u>Witt</u> eschewed any insistence that a state trial judge dictate findings of fact or conclusions of law. It held that the simple grant of a challenge for cause is an implied finding of bias, as we have explained. But McFadden urges that the finding is not due deference because Texas law did not then focus upon whether the views of a prospective juror would allow an answer to the death questions in the sentencing phase.

Putting aside that McFadden's contention insists on legal explanations by the trial judge that are not required, we are pointed to no denial of McFadden's constitutional rights. That Texas courts may have after this trial expressed their preference

9

for this emphasis in voir dire upon the prospect's ability to answer the death questions does not suggest that at the time of trial it employed a standard that contravened <u>Witt</u>.

In short, McFadden was free to turn the focus of the inquiry to the death questions, but he points to no rule of constitutional magnitude that compelled the prosecutor to do so. His effort to attach consequences to the absence of explicit findings by the trial judge -- to presume a standard he says was contrary to Supreme Court authority (<u>Witt</u>) and to trigger de novo review -- is in the teeth of <u>Witt</u>'s explicit freeing of trial judges from such an impractical burden in presiding over jury selection in capital cases. And the confusing path of McFadden's argument, even if located and followed to its destination of de novo review, is a fruitless journey. It does not face the reality that even under a de novo review the absence of ambiguity permits no conclusion but that the requirements of <u>Witt</u> were met.

We expand on McFadden's contentions only to expose their emptiness. When all is said, McFadden cannot escape by a door Congress has closed. Congress has narrowed our authority in habeas review of state convictions to asking if the adjudication by the state courts was an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. We are persuaded that the decisions of the state trial judge to exclude the two prospective jurors were based on a reasonable determination of the facts in light of the evidence

10

presented in the state court proceedings, and we are pointed to no violation of clearly established federal law as determined by the Supreme Court.

McFadden's federal petition for a writ of habeas corpus is without merit.

We affirm.