IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30389

_____

FELTUS TAYLOR, JR.,

Petitioner-Appellant,

v.

BURL CAIN, Warden, Louisiana State Penitentiary, Angola,
Louisiana,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
(97-1167-B-M2)
_____

July 29, 1999

Before WIENER, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:[*]

Feltus Taylor seeks a certificate of appealability to appeal
the district court's denial of his application for habeas corpus.
He argues that he has made a substantial showing of the denial of
a constitutional right with respect to five issues, including
whether the state trial court properly excused several jurors for
cause after they expressed reservations about imposing the death
penalty.  For the reasons that follow, we deny Taylor's request
for a certificate of appealability on all issues presented for
our review.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

FACTS AND PROCEEDINGS

On January 22, 1992, a Louisiana state court jury found
Feltus Taylor guilty of first degree murder for the killing of
Donna Ponsano.[1]  After the punishment phase of Taylor's trial,
the same jury determined that Taylor should be issued a death
sentence.  On March 30, 1992, the trial court sentenced Taylor to
death.  The Louisiana Supreme Court affirmed Taylor's conviction
and sentence on February 28, 1996, see State v. Taylor, 669 So.
2d 364 (La. 1996), and the Supreme Court of the United States
denied Taylor a writ of certiorari on October 6, 1996, see Taylor
v. Louisiana, 519 U.S. 860 (1996).

On October 6, 1997, Taylor filed a motion for post-
conviction relief in Louisiana state court, raising eight claims.
On October 14, 1997, the state trial court dismissed six of
Taylor's eight claims on the basis that they had been adjudicated
on direct appeal.  After conducting an evidentiary hearing on
Taylor's two remaining claims, the trial court denied relief on
these as well.  On December 17, 1997, the Louisiana Supreme Court
denied review of the trial court's denial of Taylor's motion for
post-conviction relief.

On December 18, 1997, Taylor filed a habeas corpus
application in the District Court for the Middle District of

---

[1] The Louisiana Supreme Court set forth the facts relating
to Taylor's crime, which are not relevant for the purposes of
this application, in State v. Taylor, 669 So. 2d 364, 366-67 (La.
1996).

2

Louisiana.  The district court heard oral argument to determine whether to grant an evidentiary hearing, and, on April 3, 1998, denied relief on each of Taylor's claims without an evidentiary hearing.  In addition, the district court denied Taylor's request for a certificate of appealability (COA) to appeal the denial of collateral relief to us.

## II.

## ANALYSIS

Taylor now seeks from us a COA to appeal the district court's denial of habeas relief.  As Taylor filed his habeas application in the district court after April 24, 1996, we apply the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  See Lindh v. Murphy, 521 U.S. 320, 336 (1997).  Under AEDPA, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C. § 2253(c)(1)(A).  A COA can only issue if a habeas petitioner makes a "substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2).  "A 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'"  Drinkard v. Johnson, 97 F.3d 751, 755 (5th Cir. 1996) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

3

Taylor advances five issues in his COA application, alleging that (1) the trial court violated his rights under the Sixth, Eighth, and Fourteenth Amendments by excluding jurors for cause based on their reservations about returning a death sentence if mitigating evidence regarding mental health issues was presented; (2) his rights under the Due Process Clause of the Fourteenth Amendment were violated by the state's alleged misadministration of anti-psychotic medication during the pendency of his trial; (3) questions asked of members of the victim's family regarding their feelings toward Taylor and the death penalty violated his rights under the Eighth Amendment; (4) the prosecutor's rebuttal argument regarding "prison lifestyle," coupled with the trial court's refusal to allow a defense witness to testify concerning conditions in prison, violated his rights under the Eighth and Fourteenth Amendments, and (5) the cumulative effect of errors of constitutional magnitude denied him a fundamentally fair trial as required by the Fourteenth Amendment.

Taylor raised several of these claims in his direct appeal and his state habeas petition. Under AEDPA, when a petitioner brings a claim in his federal habeas petition that a state court has previously adjudicated on the merits, we must defer to the state court's findings of fact and conclusions of law. See Davis v. Johnson, 158 F.3d 806, 812 (5th Cir. 1998), cert. denied, 119 S. Ct. 1474 (1999); Drinkard, 97 F.3d at 768. Under the AEDPA deference scheme, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of

4

fact are reviewed under § 2254(d)(2).  See Corwin v. Johnson, 150 F.3d 467, 471 (5th Cir.), cert. denied, 119 S. Ct. 613 (1998); Drinkard, 97 F.3d at 767-68.  When reviewing a purely legal question, we must defer to the state court unless its decision rested on a legal determination that was contrary to clearly established federal law as determined by the Supreme Court.  See Lockhart v. Johnson, 104 F.3d 54, 57 (5th Cir.), cert. denied, 117 S. Ct. 2518 (1997); Drinkard, 97 F.3d at 768.  Additionally, a federal court "will not disturb a state court's application of law to facts unless the state court's conclusions involved an 'unreasonable application' of clearly established federal law as determined by the Supreme Court."  Davis, 158 F.3d at 812 (quoting 28 U.S.C. § 2254(d)(1)); see Lockhart, 104 F.3d at 57. An application of federal law is unreasonable only "when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." Drinkard, 97 F.3d at 769; see Davis, 158 F.3d at 812; Corwin, 150 F.3d at 471-72.  State factual findings are presumed to be correct unless rebutted by clear and convincing evidence.  See Davis, 158 F.3d at 812; Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998), cert. denied, 119 S. Ct. 1339 (1999).

        With this deference scheme in mind, we consider whether Taylor has raised a substantial showing of the denial of a constitutional right.

## A.  Jury Selection Issue

Taylor bases his first claim of error on <u>Wainwright v. Witt</u>, 469 U.S. 412 (1985), and <u>Adams v. Texas</u>, 448 U.S. 38 (1980).  He argues that the trial court improperly excused several jurors for cause after they expressed reservations about returning a death sentence.  In essence, Taylor's argument is that each juror at issue merely stated that the presence of mitigating factors such as alcohol abuse and mental retardation would impair the juror's ability to return a death verdict, and that none of the jurors in question stated that this viewpoint "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  <u>Witt</u>, 469 U.S. at 420 (internal quotation marks and emphasis omitted).

The Louisiana Supreme Court rejected this claim on Taylor's direct appeal.  That court noted that a juror's bias need not be proven with "'unmistakable clarity,'" and that a trial court's determination with respect to whether a juror is unfit for service must be afforded great deference.  <u>Taylor</u>, 669 So. 2d at *4[2] (quoting <u>Witt</u>, 469 U.S. at 424).  The Louisiana Supreme Court then rejected Taylor's argument that the voir dire of several of the jurors did not reflect an inability to follow the law, concluding that, after analyzing the voir dire examinations of the jurors in question, "it is evident that the trial court was

_____

[2] The Louisiana Supreme Court chose to designate as published only part of its opinion affirming Taylor's conviction on direct review.  The court disposed of Taylor's remaining claims in an unpublished appendix.  <u>See</u> <u>Taylor</u>, 669 So. 2d at 366 n.3.  This opinion cites to the unpublished appendix using star pagination.  Thus, <u>Taylor</u>, 669 So. 2d at *4 refers to the fourth page of the unpublished appendix.

6

of the opinion that these jurors would not be able to properly weigh aggravating and mitigating circumstances if the defense presented evidence that the defendant had mental difficulties. The trial court did not abuse its discretion, and properly excused these jurors for cause under Witt. This argument lacks merit." Id. at *5-*6.

The district court, adopting the reasoning of the Louisiana Supreme Court, also denied habeas relief on this issue.

In his application for a COA, Taylor specifically points to the voir dire of two potential jurors, William Smith and Douglas Wright. He argues that the transcript of the voir dire reflects that each juror, although willing to give mitigating effect to evidence of mental disability and alcohol abuse, was willing to follow the law as dictated by the trial court. According to Taylor, the Louisiana Supreme Court's application of Witt to the facts of this case was contrary to, and involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

"A trial judge's finding of bias during voir dire is a determination of fact, subject to a presumption of correctness on collateral review . . . ." Fuller v. Johnson, 114 F.3d 491, 500-01 (5th Cir.), cert. denied, 118 S. Ct. 399 (1997). Recently, in McFadden v. Johnson, 166 F.3d 757, 758-761 (5th Cir. 1999), we discussed the deference we must afford to a state court's determination that a potential juror's views would prevent or substantially impair performance of his duties. Quoting Witt, we

7

noted how difficult is the task of a federal court on collateral review, armed only with a transcript of the voir dire, in determining whether a potential juror is biased:

> This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial court is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law . . . . [T]his is why deference must be paid to the trial judge who sees and hears the juror.

Id. at 758 (quoting Witt, 469 U.S. at 424) (alteration in McFadden).

We conclude that Taylor has failed to make a substantial showing of the denial of a constitutional right with respect to this issue. Simply put, Taylor has failed to rebut the presumption of correctness that we must afford the state trial court's finding that Mr. Smith and Mr. Wright were biased. As in Fuller, "[a]lthough the record is not as clear as we might like, the trial judge had enough evidence to make his own factual determination of bias based on the questioning of counsel and [the jurors'] answers." Fuller, 114 F.3d at 501. The voir dire testimony given by Mr. Smith and Mr. Wright does indicate, as Taylor contends, that both jurors were willing to give mitigating effect to certain evidence; however, the record also contains testimony from which the trial judge could conclude that these

veniremen's views toward the death penalty could or would substantially impair the performances of their duties as jurors. Mr. Smith stated, in response to questioning by the trial judge, the prosecution, and the defense, that his work in the mental health field could affect his deliberations during the punishment phase. The prosecutor argued to the trial judge that Mr. Smith's statements during voir dire evidenced that Mr. Smith could not fulfill his juror duties under <u>Witt</u>. In response, Taylor's attorney made the same argument Taylor makes before this court-- that Mr. Smith's statements indicated only an intent to give weight to mitigating circumstances, and did not demonstrate that Mr. Smith could not follow the law. The trial judge sustained the prosecution's challenge for cause, applying the correct <u>Witt</u> standard: "I believe that [Mr. Smith] could not, based upon his experiences, his employment, he could not follow his instructions in toto and follow his oath. I think that his experiences would override what -- what his -- what his legal responsibility should be."

The record of the voir dire examination of Mr. Wright also contains evidence from which the trial judge could have concluded that Mr. Wright's views about the death penalty could have substantially impaired his duties as a juror. The record reflects that Mr. Wright hesitated after being asked whether he had feelings that would make it "extremely difficult" for him to return a death verdict. Although Mr. Wright then stated that he could return a death verdict, the prosecutor noted that Mr.

9

Wright shook his head "no" as he gave this answer. In fact, the prosecutor noted later in the voir dire examination that Mr. Wright shook his head no while he gave affirmative answers to several questions regarding his ability to return a death verdict. Perhaps more importantly, Mr. Wright also admitted that his personal experiences with family members using drugs might impair his ability to give mitigating effect to evidence of drug use by Taylor. Even Taylor's attorney noted Mr. Wright's reservations about following the law with respect to evidence of drug use; she noted that Mr. Wright was "having real problems with" the drug use issue. As in the case of Mr. Smith, the prosecution and defense argued the relevance of <u>Witt</u> to the voir dire testimony, and, after considering the arguments, the trial court granted the challenge for cause.

Thus, the record supports the trial judge's factual finding that Mr. Smith's and Mr. Wright's personal views regarding the death penalty would substantially impair their ability to follow the law. Based on Taylor's failure to rebut the presumption of correctness that we must afford the state court finding that the jurors in question were biased, we conclude that we must deny Taylor a COA to appeal this issue.[3]

---

[3] The state's sole argument with respect to this issue is that the Louisiana Supreme Court's resolution of this issue is not unreasonable in light of the United States Supreme Court's decision to deny Taylor a writ of certiorari on direct appeal. We have never equated the AEDPA deference standards with the decision of the Supreme Court to grant or deny a writ of certiorari on a particular issue, and we decline to do so now. <u>See generally</u> <u>Hughes Tool Co. v. Trans World Airlines, Inc.</u>, 409 U.S. 363, 366 n.1 (1973) (noting the "well-settled view" that the

## B.  Misadministration of Medication

Next, Taylor contends that he has made a substantial showing of the denial of a constitutional right based on his claim that the state failed properly to administer anti-psychotic medication to him during his trial.  Taylor makes three distinct claims with respect to this issue.  In his claim, Taylor asserts first that the federal district court failed to grant him an evidentiary hearing to develop the factual basis of this claim.  He argues that the district court erred in refusing to hold a hearing to consider a report filed by Dr. Ware, a psychiatrist, regarding the relationship between Taylor's conduct during his trial and the dosages of medicine that he received.  In his second claim, Taylor maintains that the misadministration of medication without notice to his trial counsel deprived him of the right to due process.  And, in his third claim related to medication, Taylor argues that the state habeas court's denial of funds to develop this claim violated his due process rights.

We concentrate first on whether Taylor has made a substantial showing of the denial of a constitutional right with respect to his substantive claim that the misadministration of anti-psychotic medication to a defendant during a capital trial without notice to his trial counsel violates Taylor's due process rights.

---

Supreme Court's "denial of certiorari imparts no implication or inference concerning the Court's view of the merits").

11

Taylor brought this claim in his state habeas petition, and the state habeas court held an evidentiary hearing relating to his claim that the state misadministered his medication during his trial. At the evidentiary hearing, Taylor called four witnesses--two sheriff's deputies, each of whom testified concerning the general procedure in the parish prison for dispensing medication and transporting pretrial detainees; and Taylor's two trial attorneys. In addition, Taylor introduced copies of his medical records from the parish prison regarding the medication that was prescribed for him.

The state habeas court denied relief on this issue. The trial court found as a factual matter that "[t]here is no indication . . . -- from the testimony or the other evidence [--] that these medications were administered in any[]way other than was ordered." The court concluded that Taylor had failed to establish that he did not receive the medications as prescribed and, therefore, that collateral relief was not warranted. The district court denied relief on this issue for the same reason as had the state court, noting that, even considering Dr. Ware's report, Taylor had failed to present any evidence that overcame the deference due the state court finding.

We conclude that Taylor is not entitled to a COA to appeal this issue. First, as the district court correctly ruled, Taylor has failed to present any clear and convincing evidence rebutting the state habeas court's factual finding that there was no evidence indicating that Taylor's medication was administered

12

improperly. Further, even assuming arguendo that Taylor could establish that the state misadministered his medication during his trial, Taylor has failed to show that the state court's resolution of his claim involved an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). The only Supreme Court case that Taylor cites in support of this claim is Riggins v. Nevada, 504 U.S. 127 (1992). The Court in Riggins, however, "narrowly define[d]" the issue before it to be whether the "involuntary administration of [medication] denied" the defendant a full and fair trial. Id. at 133. Taylor cites no authority from the Supreme Court, nor are we aware of any, dictating relief in a situation such as the one now before us, i.e., requiring a holding that a state's failure to administer medication to a defendant denies the defendant due process at trial. We cannot say that "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." Trevino v. Johnson, 168 F.3d 173, 181 (5th Cir. 1998) (internal quotation marks omitted), petition for cert. filed, (U.S. June 17, 1999) (No. 98-9936). We therefore decline to issue a COA on this issue.

We can also easily dispose of Taylor's first and third medication-related claims. He argues that the district court erred in refusing to hold an evidentiary hearing to consider a report filed by Dr. Ware regarding the relationship between Taylor's conduct during his trial and the dosages of medicine

13

that he received.  Even assuming Taylor is correct that, under McDonald v. Johnson, 139 F.3d 1056 (5th Cir. 1998), the district court erred in failing to hold an evidentiary hearing, (a question we need not decide) the district court ruled in the alternative that, even considering Dr. Ware's report, Taylor was not entitled to relief on this issue.  Other than Dr. Ware's report, Taylor has neither explained what additional evidence he would have presented nor shown how the additional evidence would have established that the states's alleged misadministration of his medication violated his due process rights.  Thus, Taylor is not entitled to relief on his claim that the district court erred in refusing to hold an evidentiary hearing.

Further, we refuse to grant a COA on Taylor's claim that the state habeas court's refusal to fund his development of this claim denied him due process during his state habeas proceeding. "Our circuit precedent makes clear that [Taylor's] 'claim fails because infirmities in state habeas proceedings do not constitute grounds for relief in federal court.'"  Trevino, 168 F.3d at 180 (denying a COA on petitioner's due process claim based on alleged failing in state habeas court's process) (quoting Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir.), cert. denied, 118 S. Ct. 576 (1997)).

## C.  Victim Impact Testimony

Taylor next asserts that he is entitled to a COA to appeal the district court's denial of his claim that the state improperly presented particular victim impact testimony.

14

According to Taylor, the prosecutor deliberately elicited testimony from the victim's sister, niece, and fiancé concerning the appropriateness of the death penalty. Taylor relies on <u>Payne v. Tennessee</u>, 501 U.S. 808 (1991), and <u>Booth v. Maryland</u>, 482 U.S. 496 (1987), for the proposition that the presentation of this testimony violated his rights under the Eighth and Fourteenth Amendments.

This claim was rejected by the Louisiana Supreme Court in Taylor's direct appeal. That court first noted that the Supreme Court's opinion in <u>Payne</u> changed the standards regarding the admissibility of victim impact evidence. In <u>Payne</u>, the state court noted, the Supreme Court stated that the Eighth Amendment "'erects no <u>per se</u> bar'" to the admission of such evidence, and that evidence of that kind is admissible when it (1) reveals the individuality of the victim, or (2) provides information revealing the impact of the crime on the victim's survivors. <u>Taylor</u>, 669 So. 2d at 369-70 (quoting <u>Payne</u>, 501 U.S. at 827). The Louisiana Supreme Court also noted, however, that "<u>Payne</u> left undisturbed the rule that 'the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment.'" <u>Id.</u> (quoting <u>Payne</u>, 501 U.S. at 830 n.2).

The state court then considered the testimony given by the three victim impact witnesses in this case. <u>See</u> <u>id.</u> at 370-71. In addition to statements about the victim's "good characteristics" and the effect that the crime had on them, each

15

witness gave a short negative answer to the prosecution's question of whether he or she "had any sympathy" for Taylor.  Id. The Louisiana Supreme Court, assuming without deciding that the testimony regarding whether the witnesses had sympathy for Taylor was inappropriate under Payne and Booth, concluded that any possible error was harmless.  See id. at 371.  In reaching this conclusion, the state court emphasized that during the five-day penalty hearing, Taylor introduced a "vast amount of mitigation evidence," including the testimony of twenty witnesses consisting of thirteen lay witnesses, Taylor himself, numerous experts, a clinical psychologist, a psychiatrist, and a social worker. Taylor also introduced letters that he had written to his grandmother, as well as his school, work, and mental health records.  See id.  According to the state court, the mitigating evidence presented by Taylor overshadowed any possible adverse impact caused by the introduction of the allegedly inadmissable victim impact testimony, which totaled "only 10 pages of the 793 page penalty hearing transcript."  Id.

The Louisiana Supreme Court also stated that two additional factors weighed heavily in favor of finding any Payne error harmless.  First, the state court noted that both the state and the defense had questioned prospective jurors regarding their ability to remain impartial after listening to emotional victim impact testimony.  Thus, according to the state court, the jurors "surely . . . regarded the testimony of these victim impact witnesses as normal human reactions to the death of a loved one"

16

and did not give undue weight to the testimony.  Id.  Moreover, the Louisiana Supreme Court recognized that at the close of the penalty phase, the jury was specifically instructed by the trial judge on the proper weight to be afforded the victim impact evidence:

> Ladies and gentlemen, you heard testimony in this case from persons who are relatives of the victim.  These persons are called victim impact witnesses.  Evidence adduced from these witnesses is simply another form of informing the sentencing authority about the specific harms caused by the crime in question.  These witnesses, however, are not called into court for the purpose of deciding the penalty in the case.  You, the jurors, are the ones, who, in law, must bare [sic] the responsibility of deciding the penalty to be received by the defendant.  You're not to be influenced by sympathy, passion, prejudice, or public opinion.  You are expected to reach a just verdict.

Id. (alteration in original).  Given the specific instructions that the jury was given regarding victim impact testimony, the state court concluded that "any possible error created by the admission of this victim impact evidence was harmless, and does not warrant reversal of the sentence."  Id.

The district court refused to grant habeas relief on this issue, adopting the reasons articulated by the Louisiana Supreme Court.

Taylor concedes that under Payne, victim impact testimony regarding the uniqueness of the victim and the effect of the crime on the witness is admissible, but maintains that because the Payne Court left untouched the prohibition on the use of testimony about the crime, the defendant, and the appropriate sentence, he is entitled to a COA to appeal this issue.  We

17

disagree. Although it is true that the Supreme Court left untouched the Booth prohibition regarding eliciting victim impact testimony about the crime, the defendant, and the appropriate sentence, we conclude that reasonable jurists would not conclude that the victim impact testimony elicited in this case warrants relief, even under Booth.

In Byrne v. Butler, 845 F.2d 501, 511 (5th Cir. 1988), we rejected the contention that inclusion of impermissible victim impact testimony mandated granting collateral relief. We stated in that case that even if the prosecutor had elicited testimony inappropriate under Booth, "we must still determine . . . whether [the testimony] rendered Byrne's trial fundamentally unfair so as to invite habeas relief." Id. We then considered the brevity of the improper remarks and the risk that the improper remarks would have caused the jurors to be influenced by "sympathy, passion, or prejudice." Id. (internal quotation marks omitted). Considering this circuit precedent, we have no trouble concluding that the denial of relief on this issue by the Louisiana Supreme Court was not an unreasonable application of federal law as determined by the Supreme Court. As the Louisiana Supreme Court explained, the allegedly impermissible remarks were isolated relative to the broad scope of mitigation evidence offered by Taylor. In addition, given the voir dire questioning and jury instructions regarding the weight to be given such testimony, the probability that the jury considered the testimony improperly was slight. We therefore conclude that Taylor has failed to make a substantial

18

showing of the denial of a constitutional right with respect to this issue.[4]

## D. The "Prison Lifestyle" Argument

Taylor's fourth argument is that the trial court's refusal to allow testimony during the penalty phase regarding the rigors of prison life, combined with the prosecutor's rebuttal argument that "there is a life in the Penitentiary," violated his due process rights. During the penalty phase, the trial court sustained the prosecution's objection to the proffered testimony of C. Paul Phelps, a former Secretary of the Louisiana Department of Corrections, regarding the prison lifestyle. The prosecution, however, made the following argument in its rebuttal:

> He asked you that this person get a life sentence in the Penitentiary instead of a death sentence. What is he asking you? And I'll admit, life without suspension of probation and parole in the Penitentiary, that's a serious sentence, but in that, no matter what, he's asking you to let him live, to wear clean clothes, to have good meals, to have friends['] companionship, the ability to watch t.v., to take part in sports, to work, to make friends, to have other lovers, to have a life, because there is a life in the Penitentiary.

Taylor argues that this argument by the prosecution "violates every notion of fairness and due process," citing Simmons v. South Carolina, 512 U.S. 154 (1994).

---

[4] Again, the state's only argument with respect to this issue is that this court must necessarily conclude that Taylor cannot prevail on this claim in light of the AEDPA deference scheme because the Supreme Court denied Taylor a writ of certiorari to appeal the Louisiana Supreme Court's denial of relief on direct appeal. For the same reasons discussed in footnote 3, supra, this argument lacks merit.

19

The Louisiana Supreme Court rejected this claim on direct review, and its reasoning was adopted by the district court in denying relief on Taylor's federal habeas application. The state court concluded that Phelps's testimony was properly excluded as irrelevant, and that the prosecutor's references to the prison lifestyle, even if error, were harmless under State v. Sanders, 648 So. 2d 1272, 1285-86 (La. 1994). Sanders teaches that the Louisiana Supreme Court will not overturn a guilty verdict on the basis of improper argument unless "firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict." Id. at 1286 (internal quotation marks omitted).

Taylor has failed to make a substantial showing that the Louisiana Supreme Court's decision on this point was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(2). First, reasonable jurists would not be of one view that the exclusion of Phelps's testimony ran afoul of the Due Process Clause as interpreted in Simmons. The Simmons Court held that the "Due Process Clause does not allow the execution of a person on the basis of information which he had no opportunity to deny or explain." Simmons, 512 U.S. at 161 (internal quotation marks omitted) (ruling that trial court's refusal to reveal to the jury that a capital defendant would be ineligible for parole if given a life sentence was unconstitutional in light of the prosecutor's argument that the

20

defendant would be a threat to society if allowed to live).
Similarly, in Skipper v. South Carolina, 476 U.S. 1, 4-8 (1986),
the Court ruled that relief was warranted where the defendant was
prohibited from presenting evidence of his good behavior in
prison when the state vigorously argued that he would be
dangerous in the future.

We are convinced that reasonable jurists would not conclude
that the Louisiana Supreme Court's decision on this issue was an
unreasonable application of Simmons and Skipper. Unlike the
exclusion in Simmons, the exclusion of Phelps's testimony did not
create a "grievous misconception" that reasonably could have
"pervaded the jury's deliberations." Simmons, 512 U.S. at 161-
62. In Simmons and Skipper, the jury was prohibited from
learning of evidence which could have contradicted its knowledge
of crucial issues--in Simmons, whether the defendant could be
paroled if given a life sentence, and in Skipper, whether the
defendant would be dangerous in prison. The prosecutor's general
comments about prison life in this case, however, did not keep
any mitigating evidence out of the effective reach of the jury;
and common sense dictates that the jury understood that, despite
the prosecutor's statement, prison life is difficult. We are
mindful that a state court's conclusion involves an unreasonable
application of clearly established federal law as determined by
the Supreme Court when "it can be said that reasonable jurists
considering the question would be of one view that the state
court ruling was incorrect." Drinkard, 97 F.3d at 769. We

21

conclude that Taylor has not made a substantial showing that reasonable jurists considering this issue would uniformly conclude that the state court erred, and we therefore decline a COA on this issue.

Further, we decline to issue Taylor a COA to appeal his claim of prosecutorial misconduct arising from the statements. To establish a prosecutorial-misconduct claim in a habeas proceeding, the prosecutor's remarks to the jury must be more than merely undesirable, or even universally condemnable; they must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). The Sanders standard applied by the Louisiana Supreme Court is consistent with Darden. That court's determination that the prosecutor's remarks did not contribute to the jury's decision in this case is not contrary to, and does not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(2).

**E. Cumulative Error**

In his last claim, Taylor argues that, in the aggregate, the errors in his trial necessitate granting collateral relief under the cumulative error doctrine. Taylor first raised this argument in his direct appeal to the Louisiana Supreme Court. The state court rejected the claim, reasoning that because it found no merit to any of the 339 errors raised on direct appeal, "[t]he combined effect of the errors complained of did not

22

deprive the defendant of the right to a fair trial." <u>Taylor</u>, 669 So. 2d at *31.  Like that state court, the district court denied relief on this issue, concluding that "there were no errors in this case, singularly or cumulatively, that would mandate reversal of the jury's decision in this case."

Taylor is not entitled to a COA on this issue.  To be entitled to appeal this issue, he must make a substantial showing that the decision of the Louisiana Supreme Court is an unreasonable application of federal law, as interpreted by the Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d)(2).  Taylor points to no Supreme Court precedent dictating relief, and we are aware of none.  Even under our precedent, federal habeas relief can be granted for cumulative error in the conduct of a state trial only when: (1) the individual errors concern matters of a constitutional dimension, (2) the errors have not been procedurally defaulted, and (3) the errors infected the entire trial to such an extent that the resulting conviction violated due process.  <u>See</u> <u>Derden v. McNeel</u>, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc).  In light of our foregoing discussion of Taylor's other claims, we are satisfied that reasonable jurists would not be of one mind that the state court's ruling on this issue is incorrect; we therefore decline to issue a COA.

### III.

### CONCLUSION

For the foregoing reasons, we deny Taylor's request for a COA and vacate our grant of a stay of his execution.

23

COA DENIED; STAY VACATED.