IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-11052
_____


BRIAN KEITH ROBERSON,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Texas
(3:97-CV-1488)
_____

April 5, 2000

Before JOLLY, STEWART, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

I

Brian Keith Roberson applies for a certificate of
appealability on six claims of error by the district court.[1]
Specifically, he contends that (1) the district court erred by
denying a request for an evidentiary hearing; (2) the district
court erred by holding that certain evidence supporting his

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]Roberson's motion to file an amended brief in support of his
application for a certificate is granted. Our denial of the
application is based on review of that amended brief.

ineffective assistance of trial counsel claim to be procedurally barred; (3) he was denied his Sixth Amendment right to effective assistance of counsel at the punishment phase of his trial; (4) the admission of a psychiatric report at the punishment phase violated constitutional due process; and (5) and (6) the prosecutor's conduct violated his rights by striking all but one of the African-American members of the venire and for striking for cause an individual based on his views on the death penalty. We consider each argument in turn and find no merit. Therefore, the certificate is denied.

In the district court proceedings, the magistrate judge issued "Findings, Conclusions and Recommendation" on Roberson's habeas action on June 10, 1999, recommending denial of relief. The district court adopted that report. The district court thereafter denied Roberson's request for a certificate of appealability on the ground that "Petitioner has failed to make a substantial showing of the denial of a federal constitutional right," citing Trevino v. Johnson, 168 F.3d 173, 177 (5th Cir. 1999).

II

The Texas Court of Criminal Appeals stated the facts supporting Roberson's conviction and sentencing concisely.

> The evidence at trial showed that at approximately 7:00 A.M. on August 30, 1996, [Roberson], who lived directly across from the Boots residence, knocked on their door. When Mr. Boots answered the door, [Roberson] gained entry into the house. He then stabbed both Mr. and Mrs. Boots to death with a knife. Before exiting the residence, [Roberson] ransacked the house and took a necklace. It

2

was found in his possession when he was arrested approximately one day later. [Roberson's] bloody fingerprints were found inside the deceased's home. [Roberson] gave a written confession to the police admitting he ransacked the house and stabbed both the occupants. The confession was admitted into evidence at trial.

III

A

We first address Roberson's ineffective assistance of counsel claim with respect to failure to produce sufficient witnesses at the punishment phase.

The state habeas court rejected this argument without holding a hearing. No hearing was held despite an alleged promise to Roberson's habeas attorney that a hearing would be held. Based on that alleged promise, Roberson maintains that his habeas attorney did not include in his filings in state court the affidavits of four witnesses in support of his ineffective counsel claim. Exhibit six in his current filing contains those four affidavits, which counsel now claims demonstrate that there were other witnesses trial counsel should have called at the sentencing phase of the trial in mitigation of the death penalty.

The State of Texas, in its answer in the district court, had this to say:

Roberson points to no motion for evidentiary hearing or order of the state habeas court that would lend support to counsel's affidavit. Further, his state habeas application belies his assertion that he was waiting to present the affidavits at a hearing. There, he states, 'As the *attached affidavits* show (Exhibit #5), there was a much more complete sympathetic aspect of this

3

behavior.' Clearly, this language contemplates that support for his application would be submitted contemporaneously with its filing. The affidavits were made on August 28 and 30, 1995 and Roberson filed his application on August 31, 1995. Even though the state's answer dated October 7, 1996, put Roberson on notice of this omission, Roberson did not submit the affidavits before the state court denied habeas relief on January 22, 1997. Roberson cannot credibly rely on a promise by the state habeas judge to excuse his failure to attach the exhibits to his application.

(Answer, Record on Appeal vol. 2, 200) (emphasis in original) (citations omitted). Reviewing the counsel's affidavit and the state's response, the magistrate judge concluded: "The reasons advanced by Roberson's State court habeas counsel for failing to have presented the affidavits in the course of his State habeas proceedings are insufficient to excuse his failure to include the affidavits in the State proceeding and, therefore, relief on this claim is procedurally barred." We agree.

Furthermore, we take the occasion to observe that even if the affidavits had been included as evidentiary exhibits, Roberson would fare no better on the merits. We have reviewed these four affidavits, which are from family members solely. From a perspective most favorable to Roberson, we can surmise that Roberson was a troubled youth, perhaps largely as a result of the murder of his father. Sometime in adulthood, Roberson fell in with a female drug dealer, became hooked on crack cocaine (admitting to his mother "I'm on the pipe," and going from a 28 waist size to a size 21), and suffered delusional fits.

Affidavits from four more family members, which do no more than give excuses for their relative's behavior, would have been repetitive of other testimony (twelve family members and friends gave similar testimony during the punishment phase). Among the four affidavits, the ones of his mother and aunt present Roberson as thoroughly drug-addicted. These affidavits would likely have been more harmful than helpful to Roberson's cause. The other two affidavits, from his grandmother and an uncle, provide no probative evidence relating to mitigation of punishment. His grandmother states: "I know the family tried to keep his troubles from me because I loved him so and would have been upset. . . . I don't know anything about drugs, I just know that he was the best grandson a woman could have." His uncle states: "I didn't know anything about all the trouble Brian had been in and only saw him occasionally. I really had nothing to offer in the way of testimony other than the fact that he seemed to be a good boy around me." In short, even if the state habeas court had heard testimony of these individuals, it would have added nothing to Roberson's ineffective counsel claim.[2]

B

---

[2]In view of the fact that Roberson's affidavits add nothing to his ineffective assistance of counsel claim, it follows that his arguments that he was prejudiced by the state habeas court's failure to grant a hearing to present these witnesses, and that the district court erred in failing to grant an evidentiary hearing concerning the lack of a state court hearing are meritless.

We now turn to Roberson's other ineffective assistance of counsel claims. Roberson argues that he was denied his Sixth Amendment right to effective assistance of counsel at the sentencing phase of his trial on the following grounds: (1) that counsel should have asked better questions of the witnesses; (2) that counsel failed to pursue psychiatric claims; and (3) that counsel failed to request an "afterthought" charge. Roberson's claim is judged under the Strickland standard, that is, whether there was deficient performance and, if so, whether it was prejudicial.

1

We have reviewed the list of witnesses Roberson's trial attorney put on on Roberson's behalf. Roberson states: "Of the witnesses called, trial counsel elicited the vaguest endorsements of the Appellant's character. Trial counsel was unable to establish significant contact or social ties between most of the witnesses and the Appellant." With respect to counsel's questioning of these witnesses, Roberson states:

> Trial counsel's effort to rebut the onslaught of Prosecution witnesses whose testimony portrayed the Appellant as pitiless and immoral was feeble. . . . [Roberson's] attorneys were aware of mitigating issues regarding the death of [Roberson's] father and its effect on him, his struggle with drug abuse and drug dealers, and positive attributes despite these negative issues. However, they wholly failed to connect the testimony of the witnesses with these issues and witnesses that could have testified and made the connections were not called. It is not the witnesses or their knowledge but the questions asked and the selection of the witnesses by inexperienced trial counsel.

6

Roberson fails to offer anything except conclusory allegations as to how the selection of witnesses or questioning of those individuals called amounted to ineffective assistance of counsel under Strickland. This claim is without merit.

2

Roberson also argues that his counsel was ineffective because, despite his counsel's knowledge that "he had been taking an extraordinary amount of drugs and alcohol for at least two days before the offense," he did not have Roberson examined by a psychiatrist and his examination of Roberson's mental state, limited to administering a MMPI test, was "feeble."

In Strickland, the Court said:

> Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 691. Given that standard of deference, and with Roberson's inability to show any evidence that he had a mental disease, counsel's election not to pursue the path of a mental illness defense was not unreasonable. Roberson cites Profitt v. Waldron, 831 F.2d 1245, 1248-49 (5th Cir. 1987), for the proposition that where an individual's only defense is one of mental health, failure to pursue an investigation of that health constitutes deficient performance. Profitt, however, involved an insane individual's escape from a mental institution and subsequent

7

conviction for aggravated rape after that escape. Despite knowledge that a state court had adjudged Profitt insane and had him committed, his counsel did not investigate this obviously available line of defense. The facts in this case, however, presented no such situation.

3

Roberson argues that his counsel's failure to request a jury charge that his subsequent burglary of the home after he had killed his victims was an "afterthought" constitutes ineffective assistance of counsel. He refers to his confession:

> I was walking home yesterday and I went up to the Boot's front door. I knocked on the door, and he came to the door. He opened the door, and I pushed my way in. I started fighting with Mr. Boots. The lady came up from behind him. I started stabbing them. After I stabbed them, I went through the house and then I went out the front door.

Based solely on this confession, he argues that "[t]his statement, introduced by the State, indicates that the theft from the home, which constitutes the underlying offense of burglary, was an afterthought, and that [Roberson] had no intention of committing a burglary or theft when he entered the home."

The State trial court said this:

> This Court further finds that an afterthought defensive theory was not plausible with the amount of blood found in different areas of the home and the disheveled condition of the home. Blood from the victims and applicant's own injuries was found at the scene of the murders and in the front bedroom, where applicant had placed the bloody murder weapon on the vanity and taken things from the jewelry box on that vanity. An additional knife with a bent blade was found in the

8

master bedroom, but no blood was found on that knife. Further, the drawers of the chest in the master bedroom were pulled out. The house appeared to be ransacked. The position of the victim's bodies, the condition of the house, and the trail of blood throughout the house made an afterthought defensive theory incredible; applicant's trial counsel tried instead to negate the aggravating element of burglary by asserting that applicant had entered the house with the effective consent of the victims. Applicant has therefore failed to rebut the presumption that his trial and appellate counsel performed in the furtherance of sound trial strategy.

(Findings of Fact, Conclusions of Law, and Order, 292nd Judicial Dist., pp. 45-46.) Referring to Roberson's confession, the magistrate judge stated, "[t]here is nothing which indicates that he committed theft at the decedent's residence as an afterthought after fatally stabbing them." We agree. Because the state courts held that he was not entitled to an afterthought charge, and this decision is neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts in the light of the evidence presented, Roberson's claim fails. See § 2254(d)(1)-(2).

C

Roberson next argues that there was constitutional error in the introduction of his psychiatric report from juvenile prison, which had been prepared during his confinement there some six years earlier. Over counsel's objection, the trial judge allowed the prosecution to introduce the psychiatric report.

The question is whether the introduction of the report violated the standards set forth in Estelle v. Smith, 451 U.S. 454

9

(1981).    <u>Estelle v. Smith</u> held that the introduction of a psychiatric examination prepared in the course of determining the defendant's mental competency for purposes of trial violated that individual's Fifth and Sixth Amendment rights.  The examination was made post-indictment and without the permission of Smith's attorney.

<u>Estelle v. Smith</u> does not apply on the facts of this case because, at the time of Roberson's evaluation in juvenile prison, no Fifth or Sixth Amendment rights were implicated.  He was evaluated for the purpose of determining whether he should be released.  Because the evaluation did not implicate Fifth or Sixth Amendment rights, its introduction is a question of propriety under the Texas evidence code.  That, in turn, is not a subject for review by this court under habeas corpus grounds because it presents no federal question.

D

Finally, Roberson argues errors in the jury selection process. First, he contends that he was denied his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), by the State's use of a racially motivated juror strike against Ms. Terri Jackson.  The prosecutor struck all but one of the African-American members of the venire.  Second, Roberson contends that his Eighth and Fourteenth Amendment constitutional rights were violated by the

10

dismissal for cause of juror, Stanley Allen, because of his views on the death penalty.  This contention is essentially a claim under Witherspoon v. Illinois, 391 U.S. 510 (1968).

The prosecutor explained that he struck Ms. Jackson because of her lack of education, her intelligence level, she knew someone tried for murder by the same prosecutor, and because she could impose the death penalty only if one of her family members had been murdered.

Thus, even if Roberson made out a *prima facie* case of racial discrimination against the prosecutor, ultimately, he can show no violation of <u>Batson</u> because the reasons proffered by the prosecutor for striking the black juror were racially neutral. See <u>Hernandez v. New York</u>, 500 U.S. 352, 360 (1991). Given his racially neutral explanation, it fell to the trial court to decide "whether the opponent of the strike has proven purposeful discrimination." <u>Purkett v. Elem</u>, 514 U.S. 765, 767 (1995). The "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within the trial judge's province." <u>Hernandez</u>, 500 U.S. at 365. Furthermore, "[f]ederal habeas review of a state conviction requires a reviewing federal court to accord a presumption of correctness to the state court's factual findings, and demands that the presumption be rebutted by clear and convincing evidence. 28 U.S.C. S 2254(e)(1)." <u>Thompson v. Cain</u>, 161 F.3d 802, 811 (5th Cir. 1998). Adhering to that standard, we will not disturb the state court's finding that the prosecutor's strike of Ms. Jackson did not violate <u>Batson</u>.

Turning now to the second jury selection issue, we start with the premise that a prospective juror may be excluded for cause because of his views on capital punishment when "the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)).

Here, the trial court excused Mr. Allen on the basis of his responses that to impose the death penalty would violate his conscience. This was a matter of judgment, based to large extent on a credibility determination. We will not second-guess that determination. See, e.g., Corwin v. Johnson, 150 F.3d 467, 475 (5th Cir. 1998). Although Mr. Allen did say that he could impose the death penalty if told to do so, he made statements suggesting he wanted no part of that decisionmaking process. Similarly, he suggested that his ability to do so would be substantially impaired. The trial court's excusal was not "an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see McFadden v. Johnson, 166 F.3d 757, 761 (5th Cir. 1999).

IV

Because Roberson is unable to demonstrate any merit to any one of his assertions of error, his application for a certificate of appealability is

D E N I E D.

13