**Todd Kelvin WESSINGER**

v.

**Burl CAIN, Warden, Louisiana State Penintentiary, Angola, Louisiana**

**No. CIV.A. 04–637–D.**

United States District Court, M.D. Louisiana.

Feb. 28, 2005.

Soren E. Gisleson, Herman, Herman, Katz & Cotlar, New Orleans, LA, Dana-lynn Recer, Gulf Coast Advocacy Center, Houston, TX, for Petitioner.

John W. Sinquefield, Dale R. Lee, District Attorney's Office, Baton Rouge, LA, for Respondent.

### RULING ON TIMELINESS OF PETITIONER'S FEDERAL WRIT OF HABEAS CORPUS

BRADY, District Judge.

Todd Kelvin Wessinger ("petitioner"), an indigent death-sentenced Louisiana inmate, filed a petition for writ of habeas corpus on September 7, 2004 (doc. 1). In a notice to counsel, filed on October 21, 2004, this court directed Mr. Wessinger to "submit a written memorandum within 20 days addressing equitable tolling and any exhaustion issue raised" by the application of the timeliness provisions of 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (hereinafter "AEDPA"). Petitioner timely filed his supplemental memoranda (doc. 10). Burl Cain ("defendant") filed a response (doc. 11). Petitioner then filed a reply (doc. 13). After much consideration, this court holds that pursuant to the doctrine of equitable tolling, petitioner's federal time clock tolled on October 16, 2000. Further, petitioner's properly filed state collateral review on December 27, 2000, continued to toll his one year statute of limitations until

the denial of writs of his Petition for Post–Conviction Relief, First Amended Petition for Post–Conviction Relief, and Second Amended Petition for Post–Conviction Relief [collectively the "state collateral review"] on September 3, 2004.[1] Thus, the federal writ of habeas corpus now before the court was timely filed on September 7, 2004.

## PROCEDURAL BACKGROUND:

Petitioner was found guilty of two counts of first degree murder in the Nineteenth Judicial District Court on June 24, 1997. Petitioner was sentenced to death on both counts. The Louisiana Supreme Court affirmed the convictions and sentences.[2] Petitioner's writ of certiorari to the United States Supreme Court was was denied on December 6, 1999.[3]

One year and 21 days later, on December 27, 2000, the petitioner filed an application for collateral review. Petitioner sought review by the Louisiana Supreme Court. The Louisiana Supreme Court denied relief on September 3, 2004. Petitioner then filed the instant application with this court on September 7, 2004 (doc. 1).

## SUMMARY OF THE ARGUMENTS

Defendant argues, pursuant to 28 U.S.C. § 2244, petitioner's one-year statute of limitations to file a federal writ of habeas corpus began running exclusively on December 6, 1999, the date of petitioner's denial of certiorari from the Supreme Court. Thus, petitioner's writ in this court is time barred because collateral review was initiated in state court more than one year later.

Petitioner argues that his failure to file his petition of habeas was due to "extraordinary circumstances" beyond his control, meriting within the one-year period the application of the doctrine of equitable tolling. Further, petitioner argues the principles of comity require that federal district courts defer to Louisiana's definition of finality as to when direct review becomes final. In which case, the court would use the date the Supreme court denied rehearing on the writ of certiorari, January 24, 2000, rather than the December 6, 1999 denial of certiorari. In the alternative, petitioner argues the defense voluntarily waived any objection to the statute of limitations.

## ANALYSIS:

 Historically, there was no time limitation applied to the filing of a writ of habeas corpus by a person in state custody. However, in 1996, Congress enacted the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") to include a one-year statute of limitations for filing such writs.[4] Under 28 U.S.C. § 2244, a prisoner in custody pursuant to a judgment of a state court has a one-year period within which to file an application for a writ of habeas corpus. The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.[5] In the case of a petitioner who has filed a timely petition for writ of certiorari to the United States

---

1. The supplemental and amending petitions related back to the initial petition for post conviction relief, as the district court found at the September 3, 2003 status conference, where it ruled on all three petitions for the first time. The State did not oppose whether the two subsequent petitions related back.

2. *State of Louisiana v. Todd Wessinger,* 736 So.2d 162 (1999).

3. *Wessinger v. Louisiana,* 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999).

4. See H.R. Conf. Rep. No. 104–518at 111 (1996).

5. Section 2244(d)(1)(A).

Supreme Court, the judgment of conviction becomes final when the Supreme Court denies the petition for writ of certiorari.[6]

■ As provided by section 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral review (with respect to the pertinent judgment or claim) is pending shall not be counted toward the one-year period. A "properly filed application" is one submitted accordingly to the state's procedural requirements, such as the rules governing place and time of filing.[7] A state application is pending during the intervals between the state court's disposition of a state habeas corpus petition and petitioner's timely filing of petition of review at the next level.[8]

In the instant case, petitioner's direct review was concluded when the United States Supreme Court denied his writ of certiorari on December 6, 1999. His state collateral review, however, was not filed until December 27, 2000, one year and 21 days later. His state collateral review was final when the Louisiana Supreme court denied his application for collateral review on September 3, 2004.

Subsequently, petitioner filed the instant application for habeas with this court on September 7, 2004 (doc. 1). Strict application of § 2244 dictates that petitioner's federal writ of habeas is time barred, as one year elapsed before he sought collateral review. This court has questioned the issue of timeliness sua sponte and will examine it in further detail below.[9]

### (A) Equitable Tolling

■ The one-year statute of limitations included in the AEDPA does not operate as a jurisdictional bar to habeas corpus petitions and can, in appropriate, exceptional circumstances, be "equitably tolled."[10] Black's Law Dictionary defines the doctrine of "Equitable Tolling," explaining the "statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." At the root of the doctrine is the principle of "Equity," defined as "the body of principles constituting what is fair, and right; natural law."[11]

■ The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.[12] The decision to invoke equitable tolling is left to the discretion of the district court,[13] and is merit-

6. See *Giesberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir.2002) (citing *United States v. Thomas*, 203 F.3d 350 (5th Cir.2000) rejecting the argument that the one year period under 2244(d)(1) runs from the denial of certiorari, and is not suspended pending any application of rehearing based on Supreme Court rule 16.3).

7. *Lovasz v. SCIG*, 134 F.3d 146, 148–9 (3rd Cir.1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 701 (W.D.Tex.1998).

8. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir.2001).

9. *Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 767 (5th Cir.2004); *Scott v. Johnson*, 227 F.3d 260 (5th Cir.2000), citing

*Kiser v. Johnson*, 163 F.3d 326, 329 (5th Cir. 1999). Further, the Fifth Circuit has recognized the that the affirmative defense of statute of limitations may be raised sua sponte in prisoner's civil actions under 28 USC § 1915. *Id.*

10. See *Davis v. Johnson*, 158 F.3d 806 (5th Cir.1998).

11. See Black's Law Dictionary.

12. *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir.1995). (Citing *Burnett v. New York Cent. R.R. Co.* 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)).

13. *Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002).

ed only when " rare and exceptional circumstances" would warrant application of the doctrine.[14] Courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling." [15] Rare and exceptional circumstances are usually recognized if the petitioner was either (1) actively misled by the defendant about the cause of action; or (2) prevented in some extraordinary way from asserting his rights. The former is not factually applicable to this situation. Thus, this decision will focus solely on the latter.

■ To show that rare and exceptional circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the circumstances on which the claim for equitable tolling rests and the lateness of his filing. Moreover, to merit application of the doctrine, a petitioner must demonstrate that he acted with reasonable diligence during the time he wishes to have tolled, but that, despite his efforts, circumstances beyond his control prevented successful filing.

Equitable tolling is usually denied, due to the failure of the petitioner to establish more than "excusable neglect." Excusable neglect encompasses many facets, including attorney neglect, illness, unusual delay and insufficient effort on the part of both counsel and the parties.[16] After lengthy examination of precedent concerning the doctrine, this court finds that the paramount factors at issue here, abandonment by Counsel and lack of petitioner's control over the filing of his application are rare and exceptional, meriting equitable tolling.

### (1) Abandonment by Counsel

■ Petitioner's conviction became final on December 6, 1999, the day his writ of certiorari was denied by the United States Supreme Court. Subsequently, on January 24, 2000, the Supreme Court issued a denial of rehearing and set an execution date. At this time, petitioner was without counsel. On March 17, 2000, a motion was filed to have post-conviction counsel appointed for petitioner.[17]

The motion was heard on March 30, 2000, where associates of the Louisiana Crisis Assistance Center ("LCAC") entered an appearance for the purpose of asking the court to stay the execution and "to refer this matter to the Louisiana Indigent Defense Board ("LIDAB") for the appointment of post-conviction counsel." [18] Pursuant to La R.S. 15:149.1,

---

14. *Id.*

15. *Fisher v. Johnson,* 174 F.3d 710, 713 (5th Cir.1999) (quoting *Davis,* 158 F.3d at 811).

16. See *Lookingbill v. Cockrell,* 293 F.3d 256 (5th Cir.2002) (refusing to grant equitable tolling to a petitioner whose attorney failed to file a timely state post conviction proceeding due to being burdened with a heavy docket.) *Fisher v. Johnson,* 174 F.3d 710 (5th Cir.1999) ( refusing to toll statute of limitations for seventeen days despite prisoner's confinement in psychiatric ward without access to glasses or legal materials.) *Ott v. Johnson,* 192 F.3d 510 (5th Cir.1999)( affirming that equitable tolling did not apply because petitioner was represented by counsel for both of his habeas applications, the timing of the filings was under petitioner's control, and the defendant waited 19 years to file the petitions.) *Cousin v. Lensing,* 310 F.3d 843 (5th Cir.2002) (denying equitable tolling where petitioner's counsel failed for almost two years, through error or neglect, adequately to investigate the status of petitioner's case.)

17. See state Post–Conviction record excerpts, Item 1: Motion for Stay, and for Hearing To Determine a Funding Source For the Costs of Post Conviction Litigation.

18. See Transcript of Hearing on Motion for Stay and to Appoint Post Conviction counsel, March 30, 2000.

In a capital case in which the trial counsel was provided to an indigent defendant and in which the jury imposed the death penalty, the court, after imposition of the sentence of death, shall appoint the Indigent Defense Assistance Board, which shall promptly cause to have enrolled counsel to represent the defendant on direct appeal and in any state post-conviction proceedings, if appropriate.

The trial court stayed petitioner's execution date and ordered the LIDAB to file an application for post-conviction relief by April 17, 2000.

At the request of LIDAB, the trial court later extended the filing deadline and set a status conference for April 24, 2000. At the hearing, the LIDAB director, Jelpi Picou, informed the court that Louisiana lacked the funds to comply with the mandate of La. R.S. 15:149.1, which required that post-conviction counsel be provided to death sentence inmates. In response, petitioner's name was added to a list of sixteen unrepresented death row inmates.[19] Further, petitioner's name was forwarded to the Louisiana State Bar Association's Committee on Post–Conviction Pro Bono Representation ("LSBA").

In addition to requesting counsel from the LSBA, Mr. Picou asked the court to give him until July 1, 2000 to find counsel for Mr. Wessinger.[20] This request was denied, and the trial court issued a warrant of execution for June 7, 2000.

The LSBA recruited Mr. Winston Rice, of Rice, Fowler, Rodriguez, Kingsmill and Flint, LLP, in New Orleans, to represent petitioner on a pro bono basis. On May 31, 2000, Mr. Winston Rice accepted the appointment to defend Mr. Wessinger in post-conviction proceedings. Mr. Picou then filed a Motion for Stay of Execution and Appointment of Pro Bono Counsel.

The trial court stayed the execution and appointed Winston Rice on June 2, 2000.[21] During the period from May to December, 2000, Mr. Winston Rice did very minimal work on the case. Mr. Rice arranged to have a law student summarize the trial record for him and he met twice with petitioner, Mr. Wessinger, between June and August, 2000.[22] Over that summer, Mr. Rice attended a seminar and sought the advice of consultants at the LCAC on three occasions; however, despite these efforts, Mr. Rice spent only two days looking at the discovery in the DA's office. By the end of August, both the associate and the law clerk who had been assisting Mr. Rice left the law firm.[23]

By September, Mr. Rice's mental and physical health rapidly deteriorated due to a debilitating neurological and physiological disorder.[24] Shortly thereafter, Mr. Rice filed a Motion for Continuance of the Deadline to file the State Post Conviction Petition.[25] On October 16, 2000, the state court granted an extension until December 29, 2000.[26] From what this court can glean from the record, this was the last

---

19. See Transcript of Hearing on Motion to Determine Counsel for Post–Conviction relief, 04/24/00, pp. 4–5.

20. *Id* at 29.

21. See Exhibit C, Order of June 2, 2000.

22. See Affidavit of Winston Rice, pp. 1–3.

23. See Exhibit E, pp. 2–3.

24. See Exhibit G, letter from Winston Rice.

25. See Exhibit D, Motion and Order for Continuance of Deadline to file Post–Conviction Petition.

26. See Exhibit D, Motion and Order for Continuance of Deadline to file Post–Conviction Petition.

action taken by Mr. Rice on behalf of petitioner.

During the period from October to December, Mr. Rice's health worsened. In conjunction with this decline, Mr. Rice was asked to leave his firm. Despite these events, Mr. Rice did not seek to withdraw as petitioner's counsel though little to no work was being performed on petitioner's case.[27] Moreover, Mr. Rice did not inform petitioner of his condition or seek a substitution of counsel for petitioner.

Finally, on December 5, 2000, ONE DAY before petitioner's federal statute of limitations was to expire, Mr. Rice wrote a letter to the head of the LSBA project, Judge Ginger Berrigan. In the letter, Mr. Rice explained that he was suffering from "neurologic and biochemical disorders," and that he had become "disabled without income." He confided that he was unable to further assist his client (petitioner), and asked for aid in securing a replacement counsel, as his former law partners wanted "nothing to do with the case."[28] Further, Mr. Rice admitted in the letter that he had not notified his client of the insurmountable obstacles he was facing, or that he was unable to perform the function of an attorney.[29]

Shortly thereafter, the LSBA recruited new counsel for petitioner. In response, Mr. Rice filed an Ex Parte Motion for Substitution of Counsel on December 15, 2000, asking that Soren Gisleson be appointed. This substitution was filed nine days after the expiration of the statute of limitations under the AEDPA. Prior to his official appointment, Mr. Gisleson filed a "shell" state petition on December 27th, 2000, two days prior to the December 29th deadline granted to petitioner's prior counsel by the state. This appointment was approved by the Louisiana Supreme Court on January 3, 2001.

In June of 2001, a thorough petition of claims was substituted for petitioner's "shell petition." Louisiana accepted the state post relief petition as timely, and it was exhausted to the point of a denial of rehearing by the Louisiana Supreme Court, on September 3, 2004. On September 7, 2004, counsel for petitioner filed the writ now before us. Defense argues this petition was untimely, as the state petition was filed more than a year after the AEDPA statute of limitations.

While the normal errors made by attorneys may not justify equitable tolling of the statute of limitations for filing a habeas petition,[30] extreme situations, such as abandonment, require a different result.[31] Accordingly, an attorney's conduct, if it is sufficiently egregious, may constitute the sort of "extraordinary circumstances" that would justify the application of equitable tolling to the one year limita-

---

27. See Exhibit E & Exhibit F, Ex Parte Motion for Substitution of Counsel.

28. See October 13, 2000 letter from Mr. Rice to Mr. John Sinquefield, Assistant District Attorney for the 19th Judicial District of Louisiana.

29. See letter from Mr. Rice to the Honorable Ginger Berrigan, Head of the LSBA, in which Mr. Rice acknowledges he had not told petitioner, Mr. Wessinger about his mental and physical deterioration.

30. See 28 U.S.C. § 2254.

31. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir.2002)(citing to *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 237–238 (3rd Cir.1999))(holding, with respect to Title VII's ninety-day limitations period to file a complaint after the issuance of a right to sue letter, that a diligent client who persistently questioned the lawyer as to whether the complaint was filed on time and the attorney affirmatively misrepresented that he had, raises a sufficient claim of attorney abandonment to bring the case within the narrow line of cases in which lawyer misconduct justifies equitable tolling.)

tions period.[32] As detailed above, petitioner reasonably relied on the silence of his counsel, Mr. Rice, to his detriment. An attorney's intentional deceit may warrant equitable tolling of statute of limitations on a motion for collateral relief if a petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations.[33] Silence has been equated with deception in the Fifth Circuit when there is a legal or moral duty to speak.[34] The attorney client relationship contains both a legal and moral duty to speak. Failure of petitioner's attorney to do so merits equitable tolling.

In *United States v. Wynn*,[35] the Fifth Circuit examined whether a petitioner whose counsel lead him to believe that a timely § 2255 motion[36] had been filed on his behalf presented a "rare and extraordinary circumstance." In *Wynn*, the district court acknowledged that an alleged deception by the prisoner's attorney that a timely 28 U.S.C.A. § 2255 motion had been filed may have been a rare and extraordinary circumstance warranting equitable tolling; however, the case was remanded to the district court to make a factual finding as to whether reliance on those representations was reasonable. In that case, the Fifth Circuit Court was reticent to dismiss the § 2255 motion as "dismissing a first § 2255 motion or habeas petition is a 'particularly serious matter.'"[37]

The Fifth Circuit in *Wynn* questioned Wynn's diligence in pursuing his claim since it took him over 10 months to ask his father to determine whether he had actually filed a petition. Further, the Court questioned his reasonableness in relying on the misrepresentations that his attorney had filed a writ of habeas on his behalf. On remand, the district court held equitable tolling was not merited as petitioner's reliance upon the attorney's misrepresentations was unreasonable.

In the instant case, petitioner waited a mere 21 days to file his state "shell petition" for collateral review. Further, petitioner exhausted his state collateral review through denial of his writ application by the Louisiana Supreme Court. Petitioner

---

**32.** *Baldayaque v. United States*, 338 F.3d 145 (2nd Cir.2003); *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir.2003) (The conduct of the inmate's attorney was sufficiently egregious to justify equitable tolling of the one-year limitations period under the Antiterrorism and Effective Death Penalty Act of 1996. Though the attorney was hired nearly a full year in advance of the deadline, he completely failed to prepare and file a petition. The inmate contacted the attorney numerous times, by telephone and in writing, but his effort were fruitless. Despite a request that the attorney return the inmate's file, the attorney retained it for the duration of the limitations period and more than two months beyond. That conduct was so deficient as to distinguish it from the merely negligent performance of counsel.)

**33.** *U.S. v. Riggs*, 314 F.3d 796 (5th Cir.2002).

**34.** *U.S. v. Prudden*, 424 F.2d 1021 (5th Cir. 1970); See also *United States v. Leal*, 30 F.3d 577 (5th Cir.1994) (citing See *United States v. Mattox*, 689 F.2d 531, 533 (5th Cir.1982))("si-

lence may be falsity when it misleads, particularly if there is a duty to speak").

**35.** 292 F.3d 226 (5th Cir.2002).

**36.** Although here we are concerned with a § 2254 motion, a § 2255 motion for collateral relief under the AEDPA has a similar one-year statute for the statute of limitations, which the Fifth Circuit has said will be interpreted similarly for the purpose of an equitable doctrine like equitable tolling. See *U.S. v. Riggs*, 314 F.3d 796, 799 (5th Cir.2002) (citing *Davis v. Johnson*, 158 F.3d 806, 810 n. 5 (5th Cir. 1998)).

**37.** See *Felder v. Johnson*, 204 F.3d 168, 174 (5th Cir.2000) ("The need to adhere to these equitable precepts is heightened because dismissal of a first habeas petition is a particularly serious matter."); see also *Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 1299, 134 L.Ed.2d 440 (1996).
See *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999).

then filed his federal petition within days of the denial of his state collateral review. As such, this court believes petitioner's diligence requirement is met.

Further, petitioner was reasonable in relying on the silence and misrepresentations of his counsel. Mr. Rice filed an extension on petitioner's behalf in early October 2000. Further, he wrote a letter to Mr. Sinquefield, the Assistant District Attorney for the 19th Judicial District on October 13, 2000, informing him that he had sought a state extension for petitioner's state filing and further, was planning on filing a federal extension for federal relief. Further, Mr. Rice was able to competently compose a letter to Judge Ginger Berrigan, the leader of the LSBA, on December 5, 2000, to inform her that he was no longer competent to handle petitioner's case. However, Mr. Rice did not make any attempt to contact his own client to inform him of his incapacity or inability to further pursue petitioner's action. Based on the foregoing, petitioner had no reason to doubt his counsel was not following through with every diligent effort on his part. Moreover, petitioner had met with Mr. Rice twice in the summer, before his condition worsened, and was not told by Mr. Rice of any change in Rice's health condition thereafter. As previously stated, reasonable reliance on such silence equates to deception, and merits equitable tolling.[38]

### (2) Control over filing

In the instant case, petitioner acted with diligence, and it was solely the fault of his "extraordinary circumstances" that caused his petition to be untimely. The circumstances here include (1) Petitioner, a man of little IQ, and little formal education, (2) Numerous attempts to secure counsel for the purposes of filing the habeas petition (3) Petitioner's lack of funds to secure another attorney (4) Mr. Rice's failure to communicate with petitioner concerning his inability to further represent petitioner (5) Petitioner's incarceration and lack of direct access to other forms of legal assistance and the Courts.

█ Generally, pro se status does not excuse an untimely filed federal habeas petition.[39] However, for all intents and purposes, petitioner was not a pro se inmate; he had counsel. His counsel ultimately represented to him that he was going to toll the statutory limitations under the AEDPA. However, Mr. Rice failed to comply with the request of his client.[40]

Failure by his counsel to warn petitioner of his problems resulted in the failure of petitioner to obtain other judicial relief, including an extension of his federal deadline. The Fifth Circuit has granted extensions to file habeas petitions where petitioner's counsel has become incapacitated.[41] Had petitioner been informed that his counsel was incapacitated, attempted to seek substitution of counsel, or informed the Court of his situation within a reasonable time before the expiration of the one year statute of limitations, petitioner would possibly have been granted an extension of time. Such an extension would probably have been comparable to the 21 days that Mr. Wessinger's counsel exceeded his federal statute of limitations under the AEDPA. Failure to receive such an extension can only be

---

**38.** *Id.*

**39.** There are two cases for this proposition.

**40.** See *Fisher*, 174 F.3d at 714; *United States v. Flores*, 981 F.2d 231, 236 (5th. Cir.1993).

**41.** See *Davis v. Johnson*, 158 F.3d 806 (5th Cir.1998). In *Davis*, petitioner asked and was granted an extension to file his federal habeas petition, due to the incapacitation of his counsel.

attributed to his attorney's failure to warn him of his incapacity.

Moreover, Mr. Rice readily admits in his letter to the LSBA that he did not alert his client as to his failure to act, or even alert petitioner as to his mental and emotional state. Further, Mr. Rice wrongly assured the petitioner that even if his petition for post relief in the state were delayed, the defendants would make no objection as to the statute of limitations.[42] All these circumstances stripped plaintiff of control over preserving his claim, meriting equitable tolling.

### (C) Notice Requirements

Equitable tolling is only equitable, however, if the respondent was on notice that Mr. Wessinger was planning on pursuing post-conviction relief. The policy interests that underlie statutes of limitation—the avoidance of delay and unfair surprise—were never implicated in this scenario.[43] On October 13, 2000, Mr. Rice wrote a letter to John Sinquefield, District Attorney for the 19th Judicial District Court of Louisiana, counsel for the defense, made several references to petitioner seeking relief in federal court. Specifically, Mr. Rice asked the defense "not [to] oppose on the basis of prescription any such seeking of relief in federal court based upon prescription. . . ." Though this letter is not proof that Mr. Sinquefield or the defendant agreed to extend the federal statute of limitations for federal relief under the AEDPA, it certainly provided notice that petitioner intended to file post conviction relief.[44] Thus, while this court is not willing to say that the defense waived the statute of limitations as an affirmative defense, the court will recognize the latter as sufficient to give the defense notice of petitioner's future intentions to seek relief in federal court.

As petitioner has at all times exercised diligence in pursuing his claims, the court will hold that petitioner's year time limitation under the AEDPA was timely tolled on October 16, 2000, the last day Mr. Rice made a valid attempt to assist petitioner by securing a state court extension. Further, as will be discussed below, it continued to be tolled through the time period of petitioner's "properly filed" state collateral review proceeding.

### (D) "Properly Filed"

Pursuant to § 2244(d)(2), a "properly filed" state post-conviction application tolls "any [AEDPA] limitations period," including the one-year grace period, throughout the entire time during which the application is "pending."[45] A state habeas application remains "pending," and thus continues to toll AEDPA's limitations period, during the interval between a state trial court's disposition of the habeas application and the applicant's "timely filing of a notice of appeal (or petition for review) in the next court."[46] Under Louisiana law, a

---

42. See letter from Winston Rice to ADA, see Plaintiffs Excerpt 4 from the State Record.

43. See *Clymore v. U.S.*, 217 F.3d 370 (5th Cir.2000), "Theory behind statutes of limitations is that, even if one has just claim, it is unjust not to put one's adversary on notice to defend within period of limitations, and that the right to be free of stale claims comes in time to prevail over the right to prosecute them." *Id.* see also *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 651 (5th Cir. 1974).

44. See letter from Winston Rice to ADA, Plaintiffs Excerpt 4 from the State Record.

45. *Smith v. Ward*, 209 F.3d 383, 384 (5th Cir.2000) (citing *Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir.1998))("tolling provision is applicable to this one-year [grace] period for filing following AEDPA's effective date").

46. See *Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765 (5th Cir.2004) (citing *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)).

state post conviction proceeding is "proper" if it contains all the requirements located in La.Code of Criminal Procedure article 926(D). This includes all petitions where a judicial authorization for time extension has been obtained.[47] This proper filing will continue to toll the statute of limitations until its finality. Where, as in the instant case petitioner does not seek to file an application for rehearing under La.Code Criminal Procedure article 922(b), a judgment rendered becomes final when no application for rehearing has been made.[48] Though this definition of finality conflicts with that of Supreme Court rule 16.3, the AEDPA evinces no congressional intent to embroil federal courts in problematic determinations of state filings, instead permitting the states to have the first opportunity to address and correct alleged violations of a state prisoner's federal rights.[49]

In the instant case, the Louisiana state trial court granted an extension of petitioner's deadline for filing state collateral review until December 29, 2000. A "shell" petition was filed two days prior to petitioner's extension, and later substituted with an amended petition in June, 2001. Further, the application was exhausted to the point of denial of writs on September 3, 2004. Thus, it is a final judgment under Louisiana law.[50] Therefore, this Court holds petitioner's properly and timely filed state collateral review for post conviction relief continued to toll the federal statute of limitations until its finality on September 3, 2004.

**(E) OTHER ARGUMENTS**

Petitioner argues that principles of comity require this court to defer to Louisiana's definition of finality for this situation and alternatively argue that the defense voluntarily waived any objection based on the statute of limitations. In view of this court's ruling concerning equitable tolling, the court need not address these additional arguments.

**CONCLUSION**

Petitioner's federal statute of limitations was tolled on October 16, 2000. Moreover, the limitations continued to be tolled through the exhaustion of petitioner's properly filed application for state collateral review. Upon denial of rehearing by the Louisiana State Supreme Court on September 3, 2004, 52 days remained on petitioner's federal clock to file his federal writ of habeas. Therefore, the federal writ before us (doc. 1) was timely filed on September 7, 2004, with 48 days remaining on petitioner's federal clock.

**47.** See *Villegas v. Johnson,* 184 F.3d 467, 469 (5th Cir.1999).

**48.** La. C.C.P. art. 922(B).

**49.** *Id.,* citing *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

**50.** See La C.Cr.P. art. 922(B) & (C).